IN THE UNITED STATES DISTRICT COURT
for the Southern District of Texas
Houston Division

| | | |
|---|---|---|
| **Eustavo Reyes**<br>    Plaintiff,<br><br>v.<br><br>**ExxonMobil Pipeline Company**<br>    Defendant. | § § § § § § § § § | Case No.  4:19-cv-2569<br><br>JURY DEMAND |

<u>**Complaint and Jury Demand**</u>

Now comes Plaintiff, by and through his counsel, and for Complaint against the Defendant, states as follows:

### I. <u>PARTIES AND JURISDICTION</u>

1. At all times relevant hereto, Plaintiff, Eustavo Reyes, herein referred to as Mr. Reyes, has resided at 633 Crenshaw, Pasadena, Texas and is a citizen of the United States. He is an adult Hispanic male.

2. At all times relevant hereto, Defendant Corporation, ExxonMobil Pipeline Company, referred to herein as ExxonMobil, is a corporation licensed and doing business in the State of Texas, is and at all times mentioned herein was an employer within the meaning of the laws of the United States of America..

3. This Court has jurisdiction over this matter as this matter involves a federal question based upon the Americans With Disability Act and Title VII of the Civil Rights Act of 1964.

4. The County of Harris, State of Texas is the proper venue for this action pursuant to 28 U.S.C. §1391 (b)(1) and (b)(2) because this is the District and Division in which Doe

resides and in which a substantial part of the events or omissions giving rise to the claims occurred.

5.     The registered agent for the Defendant is the Corporation Service Company d/b/a CSC-Lawyers Incorp[oratin Service, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

## II. STATEMENT OF FACTS RELEVANT TO CLAIMS

6.     Plaintiff, Mr. Reyes, is a qualified individual who has a disability within the meaning of the American With Disabilities Act Amendment Act of 2008, the "ADAAA" who is also a Hispanic male American citizen protected against discrimination by Title VII of the Civil Rights Act of 1964. As regards the employment of Mr. Reyes, Defendant also violated Title VII of the Civil Rights Act and the ADAAA

7.     Mr. Reyes grew up in Pasadena, Texas and as an adult has maintained his residence there. Since 1999, he has been married and his wife is the principal of Sam Rayburn High School in Pasadena.  The have two sons and a daughter, who was accepted to Texas A&M University, but had to enroll in San Jacinto College as a result of Reyes' employment problem rooted in his wrongful termination by ExxonMobil.

8.     Other than intermittent work in residential construction, Reyes has been employed in the maintenance of oil and gas pipelines, and is a member of Local 211 of the Pipefitters, Welders or HVAC Service Technicians Union.  He has three younger brothers, all of whom rendered active military service in Iraq and Afghanistan.  Reyes was trained as an infantryman and served in the U.S. Army Reserve.

9.      Mr. Reyes developed Post Traumatic Stress Disorder, "PTSD", while embedded with an Army unit in hostile territory in Iraq.  In 2004, both admiring and concerned about his brothers' combat service, he obtained employment with Mantech, a military

contractor, for service in Iraq.  Assigned as a deputy supervisor for support services in Iraq, he deployed from Ft. Bliss and traveled with troops into hostile territory in Iraq.  Together with the soldiers of the Army unit, he was subjected to incoming artillery rounds and improvised explosive devices, "IEDs".  For three years he witnessed fatal and serious injuries and was regularly exposed to personal danger.  The cumulative effect culminated in an anxiety attack that he at first believed was a heart attack.  He was hospitalized in a U.S military hospital Bagdad and thereafter has been diagnosed as suffering from chronic PTSD.  According to the Diagnostic and Statistical Manual of Mental Disorders "DSM-5", the American Psychiatric Association has listed PTSD as mental health problem that can develop after experiencing or witnessing a threatening event like combat.

10.     According to the U.S. Department of Veteran Affairs National Center for PTSD, It has been reported that veterans experience PTSD symptoms, with many using medication or alcohol to maintain a cycle of "avoidance" in an attempt to diminish stress and anxiety.  Many use medication or alcohol to maintain a cycle of "avoidance" in an attempt to diminish stress and anxiety.  This, in turn, results in difficulty in sleeping well.

11.     While PTSD is recognized as a mental condition, it does not always have actual physical manifestations, similar to physical brain damage.  The hippocampus and amygdala are affected, causing interference with the transference of memory from short-term to long-term in ways that can vary among different individuals.  See Brewin, Chris R., *Posttraumatic Stress Disorder: Malady or Myth,* Yale University Press (2003).

12. After returning to the United States in 2007, Mr. Reyes had a brief period of measured recovery, but experienced a relapse in late 2010, possibly due to concern

about employment in the oil and gas industry as a result of uncertainty and ultimately a serious decrease in the price of oil.

13.     Mr. Reyes was offered employment by ExxonMobil Pipeline Company, hereinafter Exxon, in April 2013, as a result of contract work he previously had done for the company.  The improvement in his financial outlook relieved most of the PTSD symptoms for the succeeding year.  In 2014 he again relapsed and in 2015 he had to take medical leave because of the PTSD.  He applied for leave under the Family and Medical Leave Act, "FMLA", and his application included a statement from his treating physician which was delivered to Exxon Human Resources after being reviewed and signed by his supervisor.

14.     Prior to his FMLA, Mr. Reyes worked on projects with Troy Kidder who was promoted, and was first-line supervisor at the time of the discharge of Mr. Reyes from Exxon. Mr. Kidder observed the aggressive harassment of Mr. Reyes by a co-worker, Jim Becknell, and he also became will aware of Mr. Reyes' PTSD condition in several conversations with Mr. Reyes.  In the conversations, Mr. Reyes explained why he worked alone as much as possible and rarely joined coworkers for food and drink after work.  These conversations included frank disclosure by Mr. Reyes of the medical symptoms that caused him to avoid interacting with coworkers and why Becknell's slurs against Hispanics and other insulting comments made him very anxious and upset. Mr. Reyes also made his concerns known to Steve Coker, the supervisor at the time.  Mr. Coker was well aware of Reyes' PTSD and allowed him to leave work early when Mr. Reyes needed to see his physician for consultation and medication.  Mr. Coker also accommodated Mr. Reyes' condition by excusing Mr. Reyes from attending large group

meetings and allowing him to stay in the field during safety conferences and team building exercises.

15.     There were two separate groups of technicians assigned to Exxon projects. Mr. Reyes spoke to the Human Resource s generalist, requesting reassignment to the group away from Becknell.  Despite Mr. Reyes having described Becknell's conduct, Mr. Reyes' PTSD symptoms, and the serious effect of the slurs and insults on him, the Human Resources generalist said that the request could not be granted.  This response ignored that the two groups required the same skills and ability.

16.     Despite his PTSD and being subject to the behavior of Becknell, Mr. Reyes was recognized as having superior skills and was assigned more prominent jobs, something Becknell resented.

17.     On June 23, 2017, ExxonMobil discharged Mr. Reyes on the pretext of "violating the Company's Harassment Policy by engaging in physical violence towards another ExxonMobil employee as well as misconduct during an Internal Company investigation." Exxon alleged that Mr. Reyes "failed to provide accurate information and were (sic) determined to have been dishonest during the investigation process."

18.     Mr. Reyes does not deny that on June 19, 2017, he and Becknell were involved in a physical altercation.  The incident occurred in a restaurant in Beaumont, Texas, that is adjacent to a motel where the technicians were staying while working on a project.

19.     Mr. Reyes went to the restaurant after the group had finished work for the day and ordered food and beer.  After finishing his food, Mr. Reyes walked over to a group of Exxon workers and an employee of Gulf Coast, a contractor for the project.  Becknell was present and appeared to have been drinking beer for a long time.

20.     Getting together and socializing after work was not unusual for Exxon workers and Mr. Reyes participated from time to time.  He needed to use the restroom and walked away from the group to the restroom facility while holding a beer mug in his hand.  Mr. Reyes saw Becknell in the restroom and tried to ignore him to avoid any problem.  He recalls that Becknell slapped the mug out of his hand, and a struggle ensued during which Mr. Reyes sustained a cut on his hand.

21.     Reyes does not have a clear recollection of some details of the incident, but remembers that Becknell appeared to be heavily intoxicated, that they struggled and that the incident ended with Mr. Reyes holding Becknell down on the floor.   Becknell previously displayed a knife while accosting Mr. Reyes and Mr. Reyes believes the cut on his hand could have been caused either by broken glass form the beer mug or by the knife.

22.     After Mr. Reyes and Becknell were separated, Mr. Reyes left the restaurant and telephoned his wife in Houston, asking that she come to pick him up.  Mr. Reyes had driven his truck to Beaumont, but felt stressed, confused and hurt, and did not want to drive himself.

23.     While he waited, Mr. Reyes called his supervisor, Mr. Kidder, and told him that Becknell had attacked him.  He reminded Mr. Kidder to keep him away from Becknell because Becknell's insults and threats were seriously stressing him.  It was wrong for Mr. Kidder to insist that Mr. Reyes continue to work with Becknell even though Mr. Kidder had known about Reyes' PTSD disability and the harassment by Becknell as early as 2015.

24. Mr. Reyes' wife, with Mr. Reye's brother, picked him up and took him to the ER at St. Luke's Hospital where he was treated.  His brother then drove him back to Beaumont to pick up the truck.  Mr. Reyes again contacted Mr. Kidder early the next morning, still very stressed from the incident caused by Becknell the previous evening.

25. Mr. Reyes subsequently delivered to Exxon a medical report and was asked to report to a meeting at which he was asked to provide an account of the incident with Becknell which he did to the best of his ability.

25. Although Mr. Reyes complained to Exxon immediately after the incident whereby he was harmed by Exxon's failure to deal with his disability in accordance with the ADAAA and the harassment based on the fact that he is Hispanic, ExxonMobil discharged him within a mere few days of his most recent encounter with the harassing Exxon employee.

### III. COUNT 1
### Disability Discrimination in Violation of ADAAA

26. The allegations contained in paragraphs 1 through 25 inclusive are hereby incorporated by reference.

27. From before his termination and thereafter, Plaintiff was capable of performing the duties of several available suitable positions at the Defendants' projects.

28. Plaintiff attempted to be placed in available suitable positions at the Defendant's as a reasonable accommodation on numerous occasions.

29. Defendant continually, intentionally, and in a discriminatory manner refused to accommodate Plaintiff despite his disability and wrongfully discharged Plaintiff in violation of the ADAAA.

30. Defendant's termination of Plaintiff was not based on any legally valid justification and was discriminatory as to Plaintiff.

31. Such adverse employment actions by Defendant included allowing harassment, discrimination and retaliation which were violations of the ADAAA.

32. As a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which he should be compensated

### IV. COUNT 2
### National Origin Discrimination and Harassment in Violation of Title VII of the Civil Rights Act of 1964.

33. The allegations contained in paragraphs 1 through 25 inclusive are hereby incorporated by reference.

34. By subjecting Plaintiff to a hostile work environment on the basis of his national origin Defendant violated Title VII of the Civil Rights Act of 1964.

35. By discriminating against Plaintiff in the terms and conditions of his employment, allowing harassment, and by wrongful termination and retaliation, Defendant subjected Plaintiff to treatment in violation of Title VII of the Civil Rights Act of 1964.

36. As a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which he should be compensated

### V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Honorable Court:

a) accept jurisdiction over this matter, including the pendent claims;

b) empanel a jury to hear and decide all questions of fact;

c) award to Plaintiff back pay, front pay, and compensation for lost benefits

d) award to Plaintiff compensatory damages of against the defendant;

e) award to Plaintiff punitive damages against Defendant for national origin harassment and discrimination.

f) award to Plaintiff the reasonable attorneys' fees and costs incurred in the prosecution of this matter; and

g) order Defendant to give a written apology to Plaintiff

h) enter any other order the interests of justice and equity require.

Respectfully submitted

_____

Stanley P. Santire
Attorney-in charge for Plaintiff
State Bar of Texas #17643500
SDTX #441644
Santire Law Firm, PLLC
7500 San Felipe St.  Suite 900
Houston, TX 77063
Ph.:  713-787-0405
FAX 832-201-6791