**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **EUSTAVO REYES,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No.  4:19-CV-02569** |
| | § | |
| **EXXONMOBIL PIPELINE COMPANY,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**DEFENDANT EXXONMOBIL PIPELINE COMPANY'S**
**MOTION FOR SUMMARY JUDGMENT**

Dated: October 21, 2020                    Respectfully submitted,


**OF COUNSEL**                             */s/ Shauna Johnson Clark*
**NORTON ROSE FULBRIGHT US LLP**             Shauna Johnson Clark
Kimberly F. Cheeseman                        State Bar No.  00790977
State Bar No.  24082809                      Federal ID No.  18235
Federal ID No.  2254668                      shauna.clark@nortonrosefulbright.com
kimberly.cheeseman@nortonrosefulbright.com
                                           1301 McKinney, Suite 5100
                                           Houston, TX  77010-3095
NORTON ROSE FULBRIGHT US LLP               Telephone:     (713) 651-5151
1301 McKinney, Suite 5100                  Facsimile:     (713) 651-5246
Houston, TX  77010-3095
Telephone:     (713) 651-5151
Facsimile:     (713) 651-5246                   *Attorney in Charge for*
                                         *Defendant ExxonMobil Pipeline Company*

## TABLE OF CONTENTS

**Page**

I      NATURE AND STAGE OF PROCEEDINGS ..................................................1

II      STATEMENT OF ISSUES AND STANDARD OF REVIEW ...........................1

III      SUMMARY OF THE ARGUMENT ..........................................................1

IV      RELEVANT FACTS .................................................................................2

     A.      EMPCo Hired Reyes to Lead Crew Members on Pipeline Projects.......................2

     B.      Reyes Understood and Agreed to Abide by EMPCo's Policies .............................3

     C.      Reyes Took Medical Leave and Returned to Work With No Limitations or Restrictions ..............................................................................................4

     D.      Reyes Engaged in a Bar Fight, Which Prompted an Investigation by EMPCo...................................................................................................5

     E.      In Good Faith, EMPCo Relied Upon Human Resources's Investigation, Findings, and Recommendation..........................................................................7

     F.      Reyes Complained of Discrimination and Harassment for the First Time with this Lawsuit .............................................................................................8

V      ARGUMENT & AUTHORITIES ...............................................................12

     A.      Reyes's Discrimination Claims Are Flawed.........................................................12

         (1)      Reyes Cannot Establish a Prima Facie Case of Disability or National Origin Discrimination .................................................................12

             (a)      Reyes Cannot Prove He Was Disabled..........................................13

             (b)      Reyes Has Not Identified Any Similarly Situated Employees ..........................................................................14

         (2)      There Is No Evidence of Pretext ......................................................15

         (3)      Reyes Cannot Establish that EMPCo Failed to Accommodate Him .........17

     B.      Reyes's Hostile Work Environment Claim Also Fails ..........................................18

         (1)      The Alleged Harassment Did Not Affect a Term, Condition, or Privilege of Reyes's Employment ..............................................19

         (2)      EMPCo Did Not Know of any Alleged Harassment ...............................21

         (3)      EMPCo Took Reasonable Care To Prevent Harassment and Reyes Failed to Avail Himself of Corrective Measures ......................................22

VI      CONCLUSION.......................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amezquita v. Beneficial Tex., Inc.*,
    264 F. App'x. 379 (5th Cir. 2008) ...........................................................16

*Anderson v. Tupelo Reg'l Airport Auth.*,
    568 F. App'x 287 (5th Cir. 2014) ............................................................16

*Barkley v. Singing River Elec. Power Ass'n*,
    433 F. App'x 254 (5th Cir. 2011) ............................................................21

*Barnett v. Boeing Co.*,
    306 F. App'x 875 (5th Cir. 2009) ............................................................21

*Brown v. Bunge Corp.*,
    207 F.3d 776 (5th Cir. 2000) ..................................................................12

*Burch v. City of Nacogdoches*,
    174 F.3d 615 (5th Cir. 1999) ..................................................................15

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)..................................................................................1

*Cline v. Parish*,
    622 F. App'x 423 (5th Cir. 2015) ............................................................17

*Cooper v. Wal-Mart Transp.*,
    662 F. Supp. 2d 757 (S.D. Tex. 2009) ....................................................21

*Dominguez v. Trinidad Drilling, L.P.*,
    No. 5:13-2916, 2015 WL 1298501 (W.D. La. Mar. 23, 2015).................20

*EEOC v. LHC Grp.*,
    773 F.3d 688 (5th Cir. 2014) (ADA) ......................................................12

*Griffin v. Kennard Indep. Sch.*,
    567 F. App'x 293 (5th Cir. 2014) ............................................................14

*Griffin v. United Parcel Serv.*,
    661 F.3d 216 (5th Cir. 2011) ..................................................................18

*Harilall v. Univ. Health Sys. Dev. Corp.*,
    No. 98–50652, 1999 WL 152923 (5th Cir. Feb. 18, 1999)......................20

*Harper v. City of Jackson Mun. Sch. Dist.*,
149 F. App'x 295 (5th Cir. 2005) ...................................................................19, 23

*Harris v. Drax Biomass Inc.*,
No. 18-CV-00709, 2019 WL 6339906 (W.D. La. Nov. 26, 2019), *aff'd*, 813 F.
App'x 945 (5th Cir. 2020) .........................................................................................22

*Hernandez v. YRC Freight*,
670 F.3d 644 (5th Cir. 2012) .........................................................................18, 19, 20

*Hervey v. Miss. Dep't of Educ.*,
404 F. App'x 865 (5th Cir. 2010) ...........................................................................17

*Hinga v. MIC Grp.*,
13-cv-0414, 2014 WL 4273887 (S.D. Tex. Aug. 29, 2014)....................................14

*Hudson v. Cleco Corp.*,
No. 11-cv-1699, 2013 WL 636716 (W.D. La. Feb. 19, 2013), *aff'd*, 539 F.
App'x 615 (5th Cir. 2013) .................................................................................20, 21

*Jackson, Jr. v. Corp. Serv. Co.*,
11-cv-4404, 2013 WL 11309365 (S.D. Tex. Apr. 17, 2013)..................................21

*Jefferson v. Hosp. Partners of Am., Inc.*,
No. H-08-1535, 2009 WL 8758090 (S.D. Tex. May 18, 2009), *aff'd sub nom.*
*Jefferson v. CHRISTUS St. Joseph Hosp.*, 374 F. App'x 485 (5th Cir. 2010)........15

*Lauderdale v. Tex. Dept. of Criminal Justice*,
512 F.3d 157 (5th Cir. 2007) .............................................................................22, 23

*Lee v. Kan. City S. Ry. Co.*,
574 F.3d 253 (5th Cir. 2009) .................................................................................14

*Leopold v. Baccarat, Inc.*,
239 F.3d 243 (2d Cir. 2001)....................................................................................23

*Lumar v. Monsanto Co.*,
395 F. Supp. 3d 762 (E.D. La. 2019) ....................................................................13

*Mason v. United Air Lines, Inc.*,
274 F.3d 314 (5th Cir. 2001) .................................................................................12

*Mejias v. Brennan*,
No. CV H-15-2853, 2018 WL 8367522 (S.D. Tex. June 12, 2018)........................20

*Neely v. PSEG Tex. Ltd.*,
735 F.3d 242 (5th Cir. 2013) .................................................................................17

*Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*,
   245 F.3d 507 (5th Cir. 2001) ............................................................................14

*Oncale v. Sundowner Offshore Servs., Inc.*,
   523 U.S. 75 118 S. Ct. 998 (1998) ....................................................................19

*Ramsey v. Henderson*,
   286 F.3d 264 (5th Cir. 2002) ............................................................................19

*Reed v. Neopost USA, Inc.*,
   701 F.3d 434 (5th Cir. 2012) ............................................................................20

*Reeves v. Sanderson Plumbing Prods.*,
   530 U.S. 133 (2000)..........................................................................................13

*Reine v. Honeywell*,
   362 F. App'x 395 (5th Cir 2010) ......................................................................18

*Reyna v. Donley*,
   479 F. App'x 609 (5th Cir. 2012) .....................................................................15

*Schaeffer v. Warren Cnty., Miss.*,
   *2016* WL 411221 (S.D. Miss. Feb. 2, 2016)....................................................17

*Septimus v. Univ. of Houston*,
   399 F.3d 601 (5th Cir. 2005) ............................................................................19

*Speigner v. Shoal Creek Drummond Mine*,
   402 F. App'x 428 (11th Cir. 2010) ...................................................................23

*Stockton v. Christus Health*,
   No. 15-CV-333, 2017 WL 1287550 (E.D. Tex. Feb. 3, 2017) ..........................13

*Thibodeaux v. Tex. Dep't of Criminal Justice*,
   660 F. App'x. 286 (5th Cir. 2016) ....................................................................16

*Towery v. Cbocs Tex., LLC*,
   No. 15-CV-0122-D, 2016 WL 1751888 (N.D. Tex. May 3, 2016) ....................16

*VRV Dev. L.P. v. Mid-Continent Cas. Co.*,
   630 F.3d 451 (5th Cir. 2011) ..............................................................................1

*Williams v. Admin. Review Bd.*,
   376 F.3d 471 (5th Cir. 2004) ............................................................................19

*Williams v. Trader Publ'g Co.*,
   218 F.3d 481 (5th Cir. 2000) ............................................................................14

*Williams v. Waste Mgmt., Inc.*,
   No. 16-CV-2943, 2019 WL 1573847 (N.D. Tex. Jan. 30, 2019) ...........................................13

*Wilson v. City of Baton Rouge*,
   327 F. App'x 497 (5th Cir. 2009) ...........................................................................................15

**Rules and Statutes**

Americans with Disabilities Act ......................................................................................1, 9, 12, 13

Title VII of the Civil Rights Act of 1964 ............................................................................1, 9, 12

## EXHIBIT LIST

Exhibit A      →      Declaration of Brad Rajek
- Exhibit A-1:  Standards of Business Conduct
- Exhibit A-2:  Working Together Booklet
- Exhibit A-3:  Investigation Report
- Exhibit A-4:  Investigation Notes
- Exhibit A-5:  Summary of Allegations and Findings
- Exhibit A-6:  Reyes Termination Letter
- Exhibit A-7:  Becknell Termination Letter

Exhibit B      →      Excerpts from Deposition of Plaintiff Eustavo Reyes

Exhibit C      →      Declaration of Melissa Smith
- Exhibit C-1:  2015 Return to Work Medical Note
- Exhibit C-2:  2016 and 2017 Annual Occupational Examinations

Exhibit D      →      EEOC Charge of Discrimination

Pursuant to Federal Rule of Civil Procedure 56, Defendant ExxonMobil Pipeline Company ("EMPCo" or "Company") files this Motion for Summary Judgment.

## I        NATURE AND STAGE OF PROCEEDINGS

Plaintiff Eustavo Reyes ("Reyes") filed suit against EMPCo alleging two claims: (1) disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101; and (2) national origin discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII").  Although not specifically pleaded as a separate claim, Reyes also appears to assert a national origin-based harassment claim under Title VII.  EMPCo denies Reyes's allegations in their entirety.  Discovery is closed, and EMPCo now seeks summary judgment.

## II        STATEMENT OF ISSUES AND STANDARD OF REVIEW

The issue presented is whether EMPCo is entitled to summary judgment on Reyes's discrimination claims and, to the extent asserted, harassment claims because he fails to meet his burden of establishing a prima facie case or pretext.  Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-moving party, no genuine dispute as to any material fact exists, and the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); Fed. R. Civ. P. 56(a).  Summary judgment is warranted if Reyes fails to establish the existence of an essential element of his case.  *Celotex*, 477 U.S. at 322.  Reyes must produce evidence upon which a jury reasonably could base a verdict in his favor.  *Id.*  Reyes cannot defeat summary judgment with conclusory allegations or unsubstantiated beliefs and opinions.  *VRV Dev. L.P. v. Mid-Continent Cas. Co.*, 630 F.3d 451, 455 (5th Cir. 2011).

## III        SUMMARY OF THE ARGUMENT

EMPCo is entitled to summary judgment because Reyes does not have probative evidence to establish a genuine dispute as to any material fact with regard to any of his claims.  Specifically,

1

Reyes cannot prove his prima facie case of disability and national origin discrimination.  Reyes cannot prove that he has a disability.  Nor can Reyes establish that he was replaced by anyone outside his protected classes or that similarly situated employees were treated better.  Reyes also has no evidence of pretext.  Reyes likewise fails to establish that EMPCo failed to accommodate him or subjected him to a hostile work environment.  Accordingly, as more fully set forth below, summary judgment is appropriate on all of Reyes's claims.

## IV    RELEVANT FACTS

### A.    EMPCo Hired Reyes to Lead Crew Members on Pipeline Projects

EMPCo is focused on the safe transportation of oil and gas products through approximately 4,000 miles of pipeline across the United States.  *See* Declaration of Brad Rajek ¶ 3 (hereinafter "Rajek Dec. at __").  As part of that process, EMPCo employs Tech Leaders, who are responsible for overseeing the contractor crew members who perform the manual labor on pipeline projects, such as pipeline repairs and excavation.  *See* Deposition of Eustavo Reyes at 55:9-16; 57:21-58:3 (hereinafter "Reyes Depo. at __"); *see also* Rajek Dec. at ¶ 4.  The Tech Leaders also conduct the daily safety meeting before the crew members' shift and complete the necessary documentation for permits and other requirements for the job.  *See* Reyes Depo. at 57:6-58:19.  Although the number can vary based on the scope of the project, there are typically two Tech Leaders per job. *Id.* at 55:3-8.

In April 2014, EMPCo hired Reyes, a Mexican-American male, as a Tech Leader.  *Id.* at 37:24-38:1; *see also* Rajek Dec. at ¶ 5.  Reyes held the Tech Leader position until his discharge on June 23, 2017.  *See* Reyes Depo. at 103:24-104:3.  As Tech Leader, Reyes admits that his "actions are important for the people that [he is] leading out there on the job site."  *Id.* at 58:24-59:7.  Tellingly, EMPCo made sure the job title reflected the fact that leadership is core to the position.  Rajek Dec. at ¶ 4; *see also* Reyes Depo. at 58:20-59:1.

During his time at EMPCo, Reyes reported to four different supervisors, with the supervisor position changing approximately every year. *See* Reyes Depo. at 47:11-48:16. During the relevant time period, Reyes reported to Steve Coker from 2016 until he retired in early 2017, and then Troy Kidder from early 2017 through his termination.[1] *Id.* Throughout his employment, Reyes continually received pay raises and positive performance reviews. *Id.* at 61:22-62:11. Reyes admits that he was never prevented from successfully performing his job. *Id.* at 62:8-11.

### B.    Reyes Understood and Agreed to Abide by EMPCo's Policies

Critical to EMPCo's success is the Company's focus on providing a workplace free of discrimination and harassment. *See* Rajek Dec. at ¶ 6; Standards of Business Conduct at 1, attached as Ex. A-1. As an EMPCo employee, Reyes had access to and was familiar with EMPCo's policies and procedures, including the Standards of Business Conduct and Working Together booklet.[2] Reyes Depo. at 39:4-9; 40:4-44:10. These policies instruct employees that EMPCo does not tolerate any form of discrimination or harassment based on, among other things, disability and national origin. Reyes Depo. at 41:2-42:14; *see also* Rajek Dec. at ¶ 7; Ex. A-1 at 19; Working Together Booklet, attached as Ex. A-2. Further, EMPCo encourages employees to report any concerns to management, Human Resources, or through an anonymous hotline. Reyes Depo. at 41:2-42:14; 43:13-16; *see also* Rajek Dec. at ¶ 11. EMPCo also does not tolerate any form of retaliation against an employee who files a complaint in good faith regarding any actual or perceived discrimination, harassment, or retaliation. Reyes Depo. at 41:18-23; Rajek Dec. at ¶

---

[1]Reyes previously reported to Davis Hammas from April 2014 until early 2015 and Daniel Webb from 2015 until early 2016. *See* Reyes Depo. at 47:11-48:16.

[2]EMPCo requires all employees, including Reyes, to review these policies annually. Rajek Dec. at ¶ 9; Reyes Depo. at 39:7-9 ("Q. You had to certify every year that you reviewed and you agreed to abide by Exxon's policies, correct?  A. I believe so, yes, ma'am.").

7; Ex. A-1 at 19; Ex. A-2 at 4.  Reyes admits that he knew EMPCo provided him with multiple avenues to raise any questions or concerns about his employment.  Reyes Depo. at 45:12-22.

EMPCo promptly investigates all complaints and takes appropriate remedial or disciplinary action if necessary.  Reyes Depo. at 43:5-21; Rajek Dec. at ¶ 10.  To ensure a fair, impartial, and complete investigation, EMPCo expects all employees to be truthful and forthcoming if interviewed.  Rajek Dec. at ¶ 10; *see also* Reyes Depo. at 80:24-81:8.  If an employee provides false or inaccurate information during the course of an investigation, the employee may be subject to discipline, up to and including termination.  Rajek Dec. at ¶ 10; *see also* Reyes Depo. at 81:9-12.

Notably, EMPCo's policies prohibit more than just unlawful harassment.  Reyes Depo. at 42:15-23; 45:4-9; Rajek Dec. at ¶ 8.  In fact, Reyes admits that EMPCo prohibits all forms of harassment, including unacceptable behavior that is currently lawful but nevertheless inappropriate in the workplace.  Reyes Depo. at 42:15-23; 45:4-9.  This prohibition includes fighting, violence, or physical altercations between workers.  Rajek Dec. at ¶ 8; *see also* Reyes Depo. at 42:15-22.

### C.    Reyes Took Medical Leave and Returned to Work With No Limitations or Restrictions

Within EMPCo, the Medicine and Occupational Health ("MOH") Department handles all requests for medical leave, accommodations, and the return to work process.  Rajek Dec. at ¶ 12.  MOH also administers all physical and occupational examinations required by the job.  *Id.*  On July 15, 2015, Reyes took paid medical leave for treatment related to post-traumatic stress disorder.  Reyes Depo. at 63:21-64:15.  On August 11, 2015, Reyes's doctor released him to return to work with no restrictions or limitations.  *Id.* at 67:8-20; *see also* Rajek Dec. at ¶ 13; Return to Work Note, attached as Ex. C-1.

Pursuant to EMPCo's internal protocol, Reyes's reason for medical leave was treated as confidential information and not disclosed to anyone outside of MOH.  Rajek Dec. at ¶ 15.  The only information conveyed to Reyes's supervisor during this time period was that he was out on medical leave and was then later released to return to work with no restrictions or limitations.  *Id.*

Other than this one-month of medical leave in 2015, EMPCo has no record that Reyes made any other leave requests.  *Id.* at ¶ 14.  Nor does EMPCo have any record that Reyes requested an accommodation, or that his ability to perform his job was in any way restricted or limited.  *Id.*  Reyes also never self-identified as disabled in company reporting.  *Id.*  In fact, during Reyes's 2016 and 2017 annual occupational examination conducted by MOH for the job, Reyes answered "no" to the question of whether he had any "medical conditions since previous medical clearance which require further Evaluation."  *See* 2016 and 2017 Annual Occupational Examination Forms, attached as Ex. C-2; Reyes Depo. at 67:21-69:9.

### D.     Reyes Engaged in a Bar Fight, Which Prompted an Investigation by EMPCo

While on a business assignment for a pipeline project in Beaumont, Texas, Reyes dined at a Twin Peaks restaurant on Thursday, June 15, 2017.  *See* Reyes Depo. at 70:12-15; *see also* Rajek Dec. at ¶ 17.  Another Tech Leader, Jim Becknell (White/Non-Hispanic), and other co-workers were also at the restaurant.  *Id.* at 70:16-71:18; *see also* Rajek Dec. at ¶ 24.  At some point in the evening, Reyes and Becknell ended up in the restroom at the same time and got into a physical altercation that resulted in injuries to both employees.  Rajek Dec. at ¶ 22.  Specifically, Becknell knocked a beer mug out of Reyes's hand, which cut Reyes's hand.  *Id.*  Reyes bit Becknell's hand, puncturing his skin in several places and leaving a bloody bite mark.  *Id.*  After the fight, Reyes called his supervisor at the time, Kidder, to advise him that he had engaged in a physical altercation with Becknell.  *Id.* at ¶ 17.

Consistent with EMPCo policies, the following day, Kidder informed Human Resources of the fight, which occurred while Reyes and Becknell were on business in Beaumont.  *Id.* at ¶ 17.  On Monday, June 19, 2017, Human Resources promptly began an investigation.  *Id.* at ¶ 19.  Kim Hill, EMPCo Human Resources Advisor, and Brad Rajek, Midstream Human Resources Supervisor, conducted the investigation.  *Id.* at ¶ 18; *see also* Investigation Report attached as Ex. A-3.  Over the course of two days, Hill and Rajek interviewed seven individuals, including (i) Reyes; (ii) Becknell; (iii) Kidder; (iv) Justin Foster, Tech Leader; (v) Tommy Orand, Tech Leader; (vi) Al Key, Tech Leader; and (vii) Stephen Barnard, Tech Leader.  Rajek Dec. at ¶ 18; *see also* Ex. A-3.  Reyes admits that prior to this investigation, he had no issue with or complaints against Hill or Rajek.  *See* Reyes Depo. at 74:6-18.

When Hill and Rajek interviewed Reyes, they informed him that EMPCo had made no pre-determined judgment, and the purpose of the investigation was to gather all pertinent information in a neutral and impartial manner.  *Id.* at ¶ 19.  Hill and Rajek further advised Reyes that he was expected to be truthful and forthcoming in the investigation, and providing false or inaccurate information could subject him to discipline, up to and including termination.  *Id*.  Hill and Rajek also expressly warned Reyes that any retaliation for his participation in the investigation was strictly prohibited.  *Id.*

During his investigation interview, Reyes explained that he did not usually work with Becknell.  *See* Investigation Notes at 31, attached as Ex. A-4.  When asked about the incident on June 15, 2017, Reyes said that Becknell called him a "stupid mother***er" and accused him of taking too long on the job.  *Id.*  Reyes also shared that Becknell is "just not a happy guy" who talks down to the "young guys."  *Id.* at 31-32; *see also* Reyes Depo. at 84:23-25.  Hill and Rajek expressly asked Reyes whether Becknell made any comments other than "stupid mother***er," to

which Reyes provided no other examples.  Ex. A-4 at 31-32; *see also* Reyes Depo. at 85:6-9.

Notably, Reyes admitted to getting into a physical altercation with Becknell, but he disagreed with

Becknell's allegations that Reyes bit his finger.  Ex. A-4 at  32-33; *see also* Compl. at ¶ 18.

When Hill and Rajek wrapped up Reyes's interview, they specifically asked him whether

there was anything not discussed that Human Resources should know.  Ex. A-4 at 34.   Reyes

responded:  "**Look, Jim [Becknell]'s a good guy.  He really is.  When you get with him one on**

**one he's fine to deal with.  I have no ill will towards Jim**." *Id.* (emphasis added); *see also* Reyes

Depo. at 96:13-23.  Reyes acknowledges that the Company is allowed to rely on representations

that he made during the course of an investigation.  *See* Reyes Depo. at 97:20-23.

At no point during the interview did Reyes claim that he felt discriminated or harassed

based on his alleged disability or national origin.  Rajek Dec. at ¶ 20.  Nor did he complain about

wanting a transfer because of any alleged disability.  *Id.*  The only issue of a "transfer" arose when

Reyes inquired about transferring into another area of EMPCo for a fear of being "blackballed"

for participating in the investigation.  Ex. A-4 at 35.  Hill and Rajek, however, assured him the

Company prohibits retaliation of any kind.  *Id.*

### E.     In Good Faith, EMPCo Relied Upon Human Resources's Investigation, Findings, and Recommendation

As part of their investigation, Hill and Rajek took over thirty pages of notes from the seven

witness interviews and prepared a chart of the allegations, corroborating data, and findings.  *See*

Ex. A-4; *see also* Summary of Allegations and Findings, attached as Ex. A-5; Rajek Dec. at ¶ 21.

They also reviewed pictures of Becknell's injuries.  *See* Ex. A-5; Rajek Dec. at ¶ 21.  Based on

their investigation, Hill and Rajek prepared a report, concluding that both Reyes and Becknell

violated the Company's policies on harassment by engaging in violence with each other and failing

to tell the truth during the investigation.  *See* Ex. A-3; Ex. A-5.

More specifically, Hill and Rajek determined that Reyes and Becknell were not truthful about several allegations.  *See* Ex. A-5.  Based on the visible bite marks, Hill and Rajek determined that Reyes was not telling the truth about biting Becknell.  *Id.*  Hill and Rajek also determined that Becknell was not truthful about a previous incident involving a contractor where Becknell threatened to get him fired from the job.  *Id.*  They also determined he was lying about physically pushing another employee.  *Id.*

As a result, Hill and Rajek recommended that EMPCo terminate the employment of both Reyes and Becknell—both of whom were supposed to be leaders for the crew members.[3]  Ex. A-3; Rajek Dec. at ¶ 22.  William "Bill" Sint, EMPCo Operations Manager, relied upon Human Resources's investigation in good faith and adopted the recommendation.  Ex. A-3; Rajek Dec. at ¶ 23.  Effective June 23, 2017, EMPCo discharged both Reyes and Becknell for violation of the Company's Harassment in the Workplace policies by engaging in physical violence and for failing to provide accurate information in the investigation.  Rajek Dec. at ¶ 24; Termination Letters, attached as Ex. A-6 and Ex. A-7.  Reyes's alleged disability and national origin played no role in the decision to discharge him.  Rajek Dec. at ¶ 25.

### F.    Reyes Complained of Discrimination and Harassment for the First Time with this Lawsuit

On January 23, 2018, Reyes filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC"), complaining for the first time that EMPCo discriminated and retaliated against him based on his alleged disability and national origin.  *See* Charge of Discrimination, attached as Ex. D; *see also* Rajek Dec. at ¶ 26.

---

[3]The investigation also provided other recommendations, including that EMPCo should conduct training to the co-workers of Reyes and Becknell to remind them of the Company's drug and alcohol policy as it relates to on-site and off-site work activities and to remind them to give consideration to the appropriateness of dining establishments while on business travel.  *See* Ex. A-3; Ex. A-5.

After receiving his Right to Sue Notice, Reyes then filed this lawsuit on July 17, 2019, alleging two causes of action:  (1) disability discrimination under the ADA; and (2) national origin discrimination under Title VII.[4]  *See* Compl. at ¶¶ 26-36.  Although not entirely clear, Reyes also appears to assert a national origin-based harassment claim under Title VII.  *Id.* at ¶¶ 33-36.

Reyes's allegations are imprecise at best; he appears to allege that the following actions were discriminatory and/or harassing:

(1)    On April 15, 2017, Reyes asked Kidder for a transfer because of the alleged harassing conduct of Becknell, which he claimed was aggravating his PTSD.  Reyes alleges to have also requested a transfer away from Becknell in May or June 2017.  *See* Charge at ¶¶ 1-2.

(2)    Reyes requested a transfer with a Human Resources "generalist" who denied his alleged request.  *See* Compl. at ¶ 15.

(3)    Becknell insulted him based on his Mexican-American background and called him a "wetback."  *See* Charge at ¶¶ 1-2; Reyes Depo. at 145:2-146:2.

(4)    Reyes engaged in a physical altercation with Becknell in the restroom of a restaurant, but Reyes was the "victim" and "not the perpetrator."  *See* Charge at ¶ 4; Compl. at ¶¶ 18-21.

(5)    EMPCo terminated him.  *See* Charge at ¶ 4; Compl. at ¶ 25.

(6)    Other employees had engaged in fights but were treated more favorably and not terminated.  Specifically, Becknell had previously fought Orand, and neither of them were terminated.  *See* Charge at ¶ 5.  Jim Thibodaux and Eric Julian had also gotten into physical fights during working hours but were only suspended for one week.  *See* Charge at ¶ 5.

Before his Charge and this lawsuit, Reyes had never raised any of these allegations with EMPCo.  *See* Rajek Dec. at ¶ 26.

In regards to his alleged PTSD-related need for a transfer, other than the July-August 2015 time period when Reyes took medical leave, EMPCo has no record of any limitation or restriction

---

[4]Although Reyes alleged retaliation in his Charge, Reyes does not assert a retaliation claim here.  *See* Compl. at ¶¶ 26-36.

on Reyes's ability to perform his job.  *Id.* at ¶ 14.  Nor does EMPCo have any record of a request for an accommodation or transfer away from Becknell.  *See id.*  In his deposition, when asked to provide the name of the alleged Human Resources "generalist" to whom he spoke about the transfer, Reyes could only name the registered nurse, Bernadette Walsh, who assisted him with his medical leave in 2015.  *See* Reyes Depo. at 50:8-25; 107:8-10; 146:7-10.  Walsh, however, is not in Human Resources.  Rajek Dec. at ¶ 16.  Nor does she hold herself out as being part of Human Resources.  *Id.*  Even so, EMPCo has no record of a transfer request, most likely because the only time Walsh interacted with Reyes was when his doctor cleared him to return to work with no limitations or restrictions.  *Id.* at ¶ 14; *see also* C-1.  In other words, Reyes's own doctor never provided Walsh with any instruction that Reyes should be distanced from other employees. *See* Ex. C-1.  Reyes also has no evidence that other positions were available to which he could have been transferred.  *See* Reyes Depo. at 138:4-7 ("Q. How do you know that that was an open position, though, that you could have been transferred to?  A. Oh, I don't know. All I know is that different new hires were showing up in different groups.").

In any event, Reyes repeatedly acknowledged that he rarely worked with Becknell, and that his previous supervisors had addressed his concerns.  *See* Reyes Depo. at 46:25-47:1 ("Q. How many jobs did you work with Jim Becknell on?  A.  Very few."); *id.* at 74:19-75:10 ("Q. And do you remember telling Exxon that you usually didn't work with Becknell; is that correct? . . . A. Correct. I reached out to Steve Coker and Troy [Kidder] and asked them to please keep him away from me. . . . Q. And is it your testimony that Coker and Troy kept you away from him and that's why you were not working much with him?  A. Yes, ma'am.  Q. So then you would agree with me that they listened to your request?  A. Yes, ma'am.").

Regarding the allegation that Becknell called Reyes a "wetback," Reyes never raised this complaint with EMPCo—a point he even admits. *See* Reyes Depo. at 110:12-18 ("Q. And did you ever report the use of the phrase "wetback" to your supervisor? A. Yes, ma'am. Q. Who? A. Or not -- not specifically wetback[.]"). In his deposition, Reyes was unable to provide any details on the number of times Becknell allegedly used this phrase, nor could he provide examples of any other alleged slurs. *Id.* 110:2-8; 145:2-146:6. To be clear, in its investigation, Human Resources expressly asked Reyes whether Becknell called him any names other than a "stupid mother***er," and Reyes gave no other examples. *See* Ex. A-4 at 31-32. Instead, Reyes told Human Resources that Becknell was a "good guy" and he has no "ill will" against him. Ex. A-4 at 34.

As for his discharge related allegations, Reyes does not deny that he engaged in the physical altercation with Becknell; instead, he appears to suggest that his conduct should somehow be excused because he was the "victim" and not the "perpetrator." Charge at ¶ 4; Compl. at ¶¶ 18-21. Regardless of who started the fight, EMPCo investigated the matter and determined that both Reyes and Becknell violated the harassment policy by (1) engaging in violence toward one another and then (2) failing to be truthful about their behavior during the company investigation. EMPCo discharged both of them. *See* Ex. A-3; Ex. A-6; Ex. A-7. Becknell is White/Non-Hispanic. Rajek Dec. ¶ 24.

As for his other proffered comparators, Reyes admits he does not know Orand's, Thibodaux's, or Julian's national origin. *See* Reyes Depo. at 85:25-86:7; 127:2-8; 127:21-129:23. Nor does he know whether any of them have an alleged disability. *Id.* He also does not know their work histories or performance evaluations with EMPCo. *Id.* One of the individuals, Julian, even held a different job title than Reyes and was part of the union (which Reyes was not). *Id.*

But most critically, Reyes has no personal knowledge regarding the circumstances of their alleged fights.[5]  *Id.*

EMPCo denies Reyes's allegations in their entirety.

## V   ARGUMENT & AUTHORITIES

### A.   Reyes's Discrimination Claims Are Flawed

Reyes's disability and national origin discrimination claims fail as a matter of law.[6]

#### (1)   Reyes Cannot Establish a Prima Facie Case of Disability or National Origin Discrimination

To establish a prima facie claim of discrimination under the ADA or Title VII,[7]  Reyes must prove that he was (1) a member of a protected class (here, disabled or Mexican-American); (2) qualified for the position for which he sought employment or continued employment; (3) suffered an adverse employment action; and (4) replaced by someone outside the protected class or otherwise treated less favorably than employees outside his protected class.  *EEOC v. LHC Grp.*, 773 F.3d 688, 694 (5th Cir. 2014) (ADA); *Mason v. United Air Lines, Inc.*, 274 F.3d 314, 318 (5th Cir. 2001) (Title VII).  Only if Reyes is able to meet his prima facie burden does the burden shift to EMPCo to articulate a legitimate, non-discriminatory reason for the adverse employment action. [8]  *Id.*  Once EMPCo provides a legitimate reason for the action, the burden then shifts back to Reyes to show that EMPCo's reason was a pretext for discrimination.  *Id.*

---

[5]For instance, Orand denied that Becknell ever hit him and explained to Human Resources that "another employee who was there[] was exaggerating the story."  *See* Ex. A-4 at 27-28.  Orand himself explained that it was a "non-issue."  *Id.*

[6]It is unclear based on Reyes's Complaint if he is asserting a disability claim based on a theory of disparate treatment or failure to accommodate.  Regardless, his claim fails under both theories.

[7]Courts apply the same burden-shifting framework to claims under Title VII and the ADA.  *See, e.g., EEOC v. LHC Grp.*, 773 F.3d 688, 694 (5th Cir. 2014) (ADA); *Mason v. United Air Lines, Inc.*, 274 F.3d 314, 318 (5th Cir. 2001) (Title VII).

[8]EMPCo's burden is one of production.  *Brown v. Bunge Corp.*, 207 F.3d 776, 781 (5th Cir. 2000).  The

Reyes cannot establish the first prima facie element for his disability claim—that he was disabled.  Moreover, Reyes cannot establish the fourth prima facie element for both his disability and national origin claims—that he was replaced by someone outside his protected class or otherwise treated less favorably than similarly situated employees.

(a)      **Reyes Cannot Prove He Was Disabled**

The mere fact Reyes was previously diagnosed with PTSD and took medical leave for PTSD-related treatment for one month in 2015 does not mean he was "disabled" under the ADA at the time of his 2017 discharge.  Courts are clear: a diagnosis and/or medical leave alone is not evidence of a disability.  *See Lumar v. Monsanto Co.*, 395 F. Supp. 3d 762, 779 (E.D. La. 2019) (granting defendant's motion for summary judgment and finding that a medical diagnosis without more is insufficient to trigger the protections of the ADA when it does not limit life activities or work).  Instead, Reyes must still show that his condition substantially limited a major life activity. Reyes has no such evidence here, especially considering his own doctor released him to return to work with no restrictions or limitations.  *See, e.g.*, *Williams v. Waste Mgmt., Inc.*, No. 16-CV-2943, 2019 WL 1573847, at *13 (N.D. Tex. Jan. 30, 2019) (granting defendant's motion for summary judgment and noting that the plaintiff had failed to show a qualifying disability based on his "physician's releasing him to return to work with no restrictions"); *Stockton v. Christus Health*, No. 15-CV-333, 2017 WL 1287550, at *10 (E.D. Tex. Feb. 3, 2017) (granting defendant's motion for summary judgment and noting that "there is nothing in the record to suggest that [plaintiff] was otherwise disabled once she received a full medical release on February 13, 2015").  Summary judgment is warranted on Reyes's disability discrimination claim because he cannot establish the first element of his prima facie case.

---

burden of persuasion remains at all times on Reyes.  *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 153 (2000).

**(b)**      **Reyes Has Not Identified Any Similarly Situated Employees**

Reyes is also unable to establish the fourth element of his prima face case on both his disability and national origin discrimination claims.  First, Reyes does not even attempt to argue in his pleadings or otherwise that he was replaced by anyone outside of his protected class.  Nor can he establish this element by claiming that his former duties were distributed among others.  *Griffin v. Kennard Indep. Sch.*, 567 F. App'x 293, 294-95 (5th Cir. 2014) ("[A]n employee 'has not been "replaced" . . . when his former duties are distributed among other co-workers.'"); *Hinga v. MIC Grp.*, 13-cv-0414, 2014 WL 4273887, at *1 (S.D. Tex. Aug. 29, 2014) (same).

Second, Reyes cannot show that EMPCo gave preferential treatment to similarly situated employees outside his protected classes (*i.e.*, non-disabled or non-Mexican-American employees) under nearly identical circumstances.  *See Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001); *Williams v. Trader Publ'g Co.*, 218 F.3d 481, 484 (5th Cir. 2000).  The "nearly identical" standard is stringent.  *See Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009).  Employees being compared must have the same jobs or responsibilities, share the same supervisor, and have essentially the same comparable violation histories.  *Id.*  **"And, critically, the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions."**  *Id.* (emphasis added).

Reyes has not and cannot identify a single comparator who was similarly situated, outside his protected classes, and treated more favorably.  Put differently, Reyes has no evidence that a non-disabled or non-Mexican-American employee engaged in similar conduct—violating the Company's harassment policy for engaging in a physical altercation and then failing to be truthful in an investigation—was treated better.  *Reyna v. Donley*, 479 F. App'x 609, 611-12 (5th Cir. 2012); *Wilson v. City of Baton Rouge*, 327 F. App'x 497, 499 (5th Cir. 2009).  In fact, EMPCo

terminated the employment of both Reyes and Becknell (White/Non-Hispanic) for engaging in the physical altercation and then lying about it.  *See* Rajek Dec. at ¶ 24; Ex. A-4; Ex. A-6; Ex. A-7.

Ostensibly because he knows the discharge of Becknell is fatal to his claim, Reyes attempts to point to Orand, Thibodaux, and Julian as alleged comparators—but Reyes readily admits he has no evidence or personal knowledge of Orand, Thibodaux, or Julian's national origin or disability status.  *See* Reyes Depo. at 85:25-86:7; 127:2-8; 127:21-129:23.  He also admits that he has no personal knowledge about their work histories with EMPCo and whether they are similar.  *Id.*  In fact, Reyes expressly admits that Julian was different from him in job title and union membership. *Id.*  But more importantly, Reyes has no personal knowledge about the circumstances of the alleged fights and whether any of the individuals failed to provide truthful information in an investigation. *Id.*  Reyes's subjective belief and opinion that employees outside his protected classes were treated better is insufficient to defeat summary judgment.  *See Burch v. City of Nacogdoches*, 174 F.3d 615, 622 n.11 (5th Cir. 1999) (observing that courts should not credit unsupported assertions that a plaintiff is similarly situated to others treated more favorably); *Jefferson v. Hosp. Partners of Am., Inc.*, No. H-08-1535, 2009 WL 8758090, at *14-15 (S.D. Tex. May 18, 2009), *aff'd sub nom. Jefferson v. CHRISTUS St. Joseph Hosp.*, 374 F. App'x 485 (5th Cir. 2010) (finding that the plaintiffs were unable to establish national origin discrimination because they had no personal knowledge of their alleged comparator's national origins or relevant employment circumstances). Accordingly, Reyes cannot meet his prima facie burden for his disability and national origin discrimination claims, and summary judgment is warranted.

### (2)   There Is No Evidence of Pretext

Moreover, EMPCo has a legitimate, non-discriminatory reason for Reyes's discharge. After Human Resources conducted an investigation, EMPCo believed in good faith that Reyes violated the Company's policies on harassment by engaging in violence with Becknell and not

being truthful in the investigation about the nature of his conduct during the altercation.  *See* Ex. A-3; Ex. A-5.  Human Resources's investigation involved interviewing seven witnesses, including Reyes.  *Id.*  Human Resources also looked at photos of Becknell's injury.  Ex. A-5.  Reyes does not deny that a physical altercation occurred.  *See* Compl. at ¶¶ 18-21.  Violation of company policy for getting into a physical fight with a co-worker is a legitimate, non-discriminatory reason for termination.  *See, e.g.*, *Thibodeaux v. Tex. Dep't of Criminal Justice*, 660 F. App'x. 286, 288 (5th Cir. 2016) (affirming summary judgment in favor of defendant when the plaintiff was terminated for engaging in a physical altercation); *Towery v. Cbocs Tex., LLC,* No. 15-CV-0122-D, 2016 WL 1751888, at *2 (N.D. Tex. May 3, 2016) (granting defendant's motion for summary judgment when defendant terminated the plaintiff for fighting with another employee).  So, too, is being dishonest in an investigation.  *See Amezquita v. Beneficial Tex., Inc.,* 264 F. App'x. 379, 386 (5th Cir. 2008) (affirming district court's finding that defendant had a legitimate non-discriminatory reason for terminating plaintiff, which was "management's belief that she had lied and impeded the company's investigation")*; see also Anderson v. Tupelo Reg'l Airport Auth.*, 568 F. App'x 287, 291 (5th Cir. 2014) (holding that an employee's dishonesty, which resulted in a loss of confidence, constitutes a legitimate non-discriminatory reason for termination).

Because EMPCo has met its burden of production, the burden shifts to Reyes to establish pretext.  Reyes, however, fails to meet this burden.  Reyes has no evidence of any discriminatory animus, ***especially considering EMPCo discharged both Reyes and Becknell***.  Any argument for pretext is based solely on Reyes's subjective belief of discrimination, which is insufficient to defeat summary judgment.  *Cline v. Parish*, 622 F. App'x 423, 426 (5th Cir. 2015).  The mere fact that he disagrees with the underlying investigation is not pretext for discrimination.  *Hervey v. Miss. Dep't of Educ.*, 404 F. App'x 865, 870 (5th Cir. 2010) (holding even an employer's incorrect belief

in the underlying facts for the discipline is still a legitimate, nondiscriminatory reason); *Schaeffer v. Warren Cnty., Miss., 2016* WL 411221, at *4 (S.D. Miss. Feb. 2, 2016) ("Generally denying the alleged wrongdoing upon which termination was based is not sufficient to rebut a defendant's reasons for terminating a plaintiff."). Indeed, without any evidence of pretext, Reyes's disability and national origin discrimination claims fail.

### (3) Reyes Cannot Establish that EMPCo Failed to Accommodate Him

Reyes's second disability discrimination claim suffers a similar fate. To prevail, he must prove: (1) he was a qualified individual with a disability; (2) EMPCo was aware of his disability; and (3) EMPCo failed to reasonably accommodate his disability. *Neely v. PSEG Tex. Ltd.*, 735 F.3d 242, 247 (5th Cir. 2013). Reyes cannot prove all three elements of his prima facie case. As explained above, Reyes's doctor released him to return to work from medical leave in 2015 without any restrictions or limitations. *See* Ex. C-1; *see also* Reyes Depo. at 67:8-20; Rajek Dec. at ¶ 13. MOH also did not disclose Reyes's medical condition to Reyes's supervisor. Rajek Dec. at ¶ 14. Nor did Reyes ever seek medical leave again or an accommodation. *Id.* He also never self-identified as disabled in company reporting. *Id.* Instead, Reyes repeatedly affirmed he had no medical condition that required further evaluation. Ex. C-2. There is simply no evidence that Reyes had a physical or mental impairment that substantially limited his ability to perform a major life function, or that EMPCo knew about any such impairment.

Even assuming Reyes could prove that he had a disability about which EMPCo was aware, his accommodation claim still fails. Presumably his claim is based on his vague assertion that his alleged disability should have been accommodated through a transfer. But even if working away from Becknell is somehow a reasonable needed accommodation for PTSD, Reyes nevertheless admits that EMPCo did accommodate him by attempting to limit the amount of time Reyes and Becknell worked together. *See* Reyes Depo. at *id.* at 74:19-75:10 ("Q. And is it your testimony

that Coker and Troy kept you away from [Becknell] and that's why you were not working much with him?  A. Yes, ma'am.  Q. So then you would agree with me that they listened to your request? A. Yes, ma'am.").  That he did not receive his preferred accommodation of a permanent transfer— his preference that is unsupported by any documentation from a health care provider—is insufficient to support this claim, especially when he has no evidence that there were open and available positions to which he could transfer.[9] *Griffin v. United Parcel Serv.*, 661 F.3d 216, 224 (5th Cir. 2011); *see also Jenkins v. Cleo Power, LLC*, 487 F.3d 309, 316 (5th Cir. 2007).  Without more, summary judgment is proper on Reyes's failure to accommodate claim.

## B.      Reyes's Hostile Work Environment Claim Also Fails

To the extent Reyes is alleging a national origin-based hostile work environment claim based on Becknell's conduct, it also falls short of the standard necessary to survive summary judgment.  To establish a hostile work environment claim, Reyes must prove that he (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment was based on his national origin; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment.  *Hernandez v. YRC Freight*, 670 F.3d 644, 651 (5th Cir. 2012).[10]

Only if Reyes establishes his prima facie case, EMPCo may avoid liability by raising the *Faragher/Ellerth* two-pronged affirmative defense:[11] (a) that EMPCo exercised reasonable care to

---

[9]Reyes also bears the burden of proving that a specific position was available.  *Jenkins*, 487 F.3d at 316. He has not offered any such specific, available position.

[10]If the alleged harassment is by a supervisor, the plaintiff need only prove the first four elements.  *Reine v. Honeywell*, 362 F. App'x 395, 397 (5th Cir 2010).  No such allegation of supervisory harassment exists here.

[11]The Fifth Circuit has held that the *Faragher/Ellerth* defense is applicable to national origin-based harassment claims.  *See Williams v. Admin. Review Bd.*, 376 F.3d 471, 478 (5th Cir. 2004).

prevent and correct promptly any harassing behavior, and (b) that Reyes unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Harper v. City of Jackson Mun. Sch. Dist.,* 149 F. App'x 295, 298–99 (5th Cir. 2005).

Reyes cannot establish the fourth and fifth element of his prima facie claim.  Even so, EMPCo can conclusively establish the *Faragher/Ellerth* affirmative defense.

### (1)   The Alleged Harassment Did Not Affect a Term, Condition, or Privilege of Reyes's Employment

The Supreme Court and the Fifth Circuit impose a heavy burden on a plaintiff to show that harassment is severe or pervasive enough to establish a hostile work environment claim.  *See, e.g., Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-82 118 S. Ct. 998 (1998); *Septimus v. Univ. of Houston*, 399 F.3d 601, 611-12 (5th Cir. 2005).  Thus, "for harassment on the basis of [national origin] to affect a term, condition, or privilege of employment . . . it must be sufficiently severe or pervasive enough to alter the conditions of . . . employment." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

Whether conduct is "hostile" or "abusive" depends on the totality of the circumstances, including the frequency of the conduct, its severity, whether it was physically threatening or humiliating, and whether it unreasonably interfered with the employee's work performance. *Hernandez,* 670 F.3d at 651.  In addition, harassment must be "both objectively and subjectively offensive" and must "detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers." *Id*.

Reyes's vague allegations do not meet this demanding standard.  Reyes presents nothing more than a general allegation that his coworker Becknell subjected him to the phrase "wetback" and other slurs; however, Reyes was unable to provide any details on the number of times Becknell

allegedly used this phrase.  *See* Reyes Depo. at 110:2-8 ("Q. And how many times did you say

Becknell told you -- called you a wetback?  A. I don't have a count.").  Reyes's inability to provide

any specifics is most likely because he rarely worked with Becknell—a point he concedes.  *See*

Reyes Depo. at 46:25-47:1; *id.* at 74:19-75:10.  Nor could Reyes provide any other examples of

alleged slurs.  *See id.* 145:2-146:6; *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 443 (5th Cir. 2012)

(holding plaintiff's general statements that he was subject to ageist comments "at various times"

for six years without providing any detail as to the nature and context of the comments were

insufficient); *Hudson v. Cleco Corp.*, No. 11-cv-1699, 2013 WL 636716, at *6 (W.D. La. Feb. 19,

2013), *aff'd*, 539 F. App'x 615 (5th Cir. 2013) (holding plaintiff failed to establish a hostile work

environment claim based on his allegations that he was constantly confronted with derogatory and

racial remarks because he did not provide any specific incidents or examples).

        Even the specific example of "wetback," while deplorable, standing alone, simply fails to

create a hostile work environment under the exacting standards for a hostile work environment

claim.  *See Harilall v. Univ. Health Sys. Dev. Corp.*, No. 98–50652, 1999 WL 152923, at *4 (5th

Cir. Feb. 18, 1999) (finding no hostile work environment claim in a case involving the comments

"wetback" and "illegal alien"); *Mejias v. Brennan*, No. CV H-15-2853, 2018 WL 8367522, at *1

(S.D. Tex. June 12, 2018) (finding no hostile work environment claim in a case where the plaintiff

was called a "frito Bandito" and a "wetback"); *Dominguez v. Trinidad Drilling, L.P.*, No. 5:13-

2916, 2015 WL 1298501, at *1 (W.D. La. Mar. 23, 2015) (granting summary judgment on

plaintiff's hostile work environment claim when the plaintiff was greeted by a co-worker as "Hey,

Mexican," "Bubba," and "I will never get another damn Mexican to work on my tractor"); *see also*

*Jackson, Jr. v. Corp. Serv. Co.*, 11-cv-4404, 2013 WL 11309365, at *20 (S.D. Tex. Apr. 17, 2013)

(finding no hostile work environment based on allegations that plaintiff's supervisor said he would

not hire from a "black school," referred to African-Americans as "difficult" because they were trying to "rip you off," and used the n-word twice).

More importantly, Reyes has not contended, much less established, that this alleged conduct was sufficiently severe or pervasive to interfere with or destroy his ability to succeed in the workplace.  *See Barnett v. Boeing Co.*, 306 F. App'x 875, 880 (5th Cir. 2009) (finding severe or pervasive harassment only where actions "destroyed [plaintiff's] ability to succeed in the workplace environment"); *Cooper v. Wal-Mart Transp.*, 662 F. Supp. 2d 757, 772 (S.D. Tex. 2009) (finding no hostile work environment because plaintiff "was able to perform his job duties without difficulty").  Reyes admits he rarely worked with Becknell, and further admits that he was never detracted or prevented from successfully performing his job in any way.  *See* Reyes Depo. at 46:25-47:1; 62:8-11; 74:19-75:10.  He also always received positive performance evaluations and pay raises.  *Id.* at 61:22-62:11.

Without more, Reyes's vague and conclusory allegation regarding a hostile work environment cannot defeat summary judgment.  *See, e.g., Hudson*, 539 F. App'x at 620 (affirming lower court's dismissal of hostile work environment claim where plaintiff's allegations were nothing more than "conclusory statements of discrimination, inadmissible hearsay, unsubstantiated assertions"); *Barkley v. Singing River Elec. Power Ass'n*, 433 F. App'x 254, 258 (5th Cir. 2011) (same).

### (2)    EMPCo Did Not Know of any Alleged Harassment

Reyes also cannot show that EMPCo knew of any alleged harassment.  To be clear, Reyes admits that he never complained that Becknell allegedly called him a wetback.  *See* Reyes Depo. at 110:12-18.  Nor did he raise the issue with Human Resources when specifically asked whether Becknell called him any name other than "stupid mother***er."  *See* Ex. A-4 at 31-32.  Instead, Reyes continued to insist to Human Resources that Becknell was a "good guy" to whom he

21

harbored no ill will. *See id.* at 34. Reyes simply has no evidence that EMPCo knew of any alleged harassment, and, as a result, Reyes cannot establish his prima facie burden. *See Harris v. Drax Biomass Inc.*, No. 18-CV-00709, 2019 WL 6339906, at *7 (W.D. La. Nov. 26, 2019), *aff'd*, 813 F. App'x 945 (5th Cir. 2020) (finding plaintiff could not establish his prima facie harassment claim because he had not evidence that his employer knew or should have known of the co-worker's racist comment).

(3) **EMPCo Took Reasonable Care To Prevent Harassment and Reyes Failed to Avail Himself of Corrective Measures**

But even assuming Reyes can establish his prima facie burden, EMPCo can conclusively establish the *Faragher/Ellerth* affirmative defense. Here, EMPCo exercised care to prevent and correct harassment in the workplace because it has a Standards of Business Conduct and Working Together booklet with anti-discrimination and anti-harassment policies in place, which includes various mechanisms for employees to make a complaint. *See* Ex. A-1; Ex. A-2. In fact, EMPCo makes employees certify annually that they have reviewed the policies. Reyes Depo. at 39:7-9; *see also* Rajek Dec. at ¶ 9. Reyes acknowledges that he reviewed, understood, and agreed to the policies and procedures. Reyes Depo. at 39:4-9; 40:4-44:10; *see Lauderdale v. Tex. Dept. of Criminal Justice,* 512 F.3d 157, 164 (5th Cir. 2007) (holding employer met first prong of affirmative defense by virtue of institutional policies).

Further, even if Reyes allegedly complained about Becknell's conduct (which EMPCo submits he did not), Reyes did not avail himself of EMPCo's multiple other corrective measures by lodging a complaint of discrimination or retaliation. *See* Ex. A-1; Ex. A-2; *Lauderdale*, 512 F.3d at 164 (holding employee failed to meet second prong even though he had previously complained about harassment, because he did not pursue any other avenue available under the policies); *Harper*, 149 F. App'x at 302 (holding employer was entitled to *Faragher/Ellerth* defense

22

because, despite plaintiff's alleged fear of retaliation, plaintiff did not avail herself of the multiple avenues to complain, including the option to bypass the alleged harassing supervisor to lodge a complaint); *see also Speigner v. Shoal Creek Drummond Mine*, 402 F. App'x 428, 432 (11th Cir. 2010) ("Subjective fears of reprisal . . . standing alone, do not excuse an employee's failure to report a supervisor's harassment."); *Leopold v. Baccarat, Inc.*, 239 F.3d 243, 246 (2d Cir. 2001). Reyes's failure to act bars his claim, and summary judgment is warranted.

## VI    CONCLUSION

For the above-stated reasons, Defendant ExxonMobil Pipeline Company prays that the Court grant its Motion for Summary Judgment all of Plaintiff claims and all other relief to which it is entitled.

Dated: October 21, 2020                              Respectfully submitted,


**OF COUNSEL**                                       /s/ Shauna Johnson Clark
**NORTON ROSE FULBRIGHT US LLP**          _____
Kimberly F. Cheeseman                              Shauna Johnson Clark
State Bar No.  24082809                             State Bar No.  00790977
Federal ID No.  2254668                             Federal ID No.  18235
kimberly.cheeseman@nortonrosefulbright.com          shauna.clark@nortonrosefulbright.com
                                                    1301 McKinney, Suite 5100
NORTON ROSE FULBRIGHT US LLP                   Houston, TX  77010-3095
1301 McKinney, Suite 5100                          Telephone:      (713) 651-5151
Houston, TX  77010-3095                            Facsimile:      (713) 651-5246
Telephone:      (713) 651-5151
Facsimile:      (713) 651-5246                      *Attorney in Charge for*
                                                    *Defendant ExxonMobil Pipeline Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served in compliance with the

Federal Rules of Civil Procedure upon the following counsel and/or parties of record on this the

October 21, 2020.

      Stanley P. Santire (Attorney-in-Charge)
      Santire Law Firm, PLLC
      7500 San Felipe St. Suite 900
      Houston, Texas 77063
      Telephone:   (713) 787-0405
      Facsimile:   (832) 201-6791

                    */s/ Kimberly Cheeseman*
                    Kimberly Cheeseman