# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUTON DIVISION

| | | |
|---|---|---|
| EUSTAVO REYES, | § § | |
| Plaintiff | § § | |
| v. | § § | Civil Action No. 4:19-CV-02569 |
| EXXONMOBIL PIPELINE COMPANY | § § § | |
| Defendant | § § | |

## RESPONSE TO
## DEFENDANT EXXONMOBIL PIPELINE COMPANY'S
## MOTION FOR SUMMARY JUDGMENT

Dated November 6, 2020

Respectfully submitted:

_____
Stanley P. Santire
State Bar No. 17643500
Federal ID No. 441644
Email: Stanley@santir.com
Santire Law Firm, PLLC
7500 San Felipe St. Ste. 900
Houston, TX 77063
Ph: 713-787-0405
FAX: 832-201-6791

Attorney in Charge for
Plaintiff Eustavo Reyes

| TABLE OF CONTENTS | Page |
|---|---|
| I. NATURE AND STAGE OF PROCEEDINGS | 3 |
| II. STATEMENT OF ISSUES AND STANDARD OF REVIEW | 3 |
| III. FACTS AND ARGUMENT | 4 |
| IV. PRETEXT | 16 |

EXHIBIT LIST

- Reyes Exhibit A-1: taken from ExxonMobil Exhibit A-1, ExxonMobil Standards of Business Conduct pages 19 and 21.

- Reyes Exhibit A-3: taken from ExxonMobil Exhibit A-3, ExxonMobil Investigation Report

- Reyes Exhibit A-4: taken from ExxonMobil Exhibit A-4, ExxonMobil Witness Statement, pages Exxon 000231 through Exxon 000236, Statement by James Becknell

- Reyes Exhibit A-5: taken from ExxonMobil Exhibit A-5, ExxonMobil Summary of Allegations and Findings excerpt from page Exxon 000268, incidents involving James Becknell.

- Reyes Exhibit A-6: taken from ExxonMobil Exhibit A-6, Reyes Termination Letter

- Reyes Exhibit A-7: taken from ExxonMobil Exhibit A-7, Becknell Termination Letter.

- Ryes Exhibit B: taken from ExxonMobil Exhibit B, ExxonMobil deposition of Eustavo Reyes, pages 46, 64, 74, 75,

| TABLE OF AUTHORITIES | Pages |
|---|---|
| *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) | 3 & 14 |
| *EEOC v. LHC Group* 773 F.3d 688, 694 (5th Cir. 1014) | 5, 11, & 15 |
| *Rachid v. Jack In the Box, Inc.* 376 F.3d 305, 312, (5th Cir 2004) | 14 |

## I.
## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Eustavo Reyes ("Reyes") filed suit against ExxonMobil alleging various claims. The most important consists of disability discrimination under the Americans with Disabilities Act, "ADA" 42 U.S.C. §12101. In short, he was terminated because ExxonMobil failed to maintain the accommodation for a disability consisting of PTSD to which he was entitled and had been provided by ExxonMobil. Although Reyes made a separate claim concerning discrimination under Title VII of the Civil Rights Act of 1964, in this Response to the Motion for Summary Judgment by ExxonMobil, Reyes will deal only with the most egregious action by ExxonMobil which is disability discrimination. The bottom line is that having accommodated Reyes, the failure of ExxonMobil to accommodate Reyes was the major factor in Reyes being terminated by ExxonMobil. Because the Response of Reyes to the Motion for Summary Judgment so frequently quotes that Motion, for economy that Motion is frequently referred to herein as "MSJ' for "Motion for Summary Judgment."

## II.
## STATEMENT OF ISSUES AND STANDARD OF REVIEW

ExxonMobil filed a Motion for Summary Judgement in an attempt to deny Reyes an opportunity to exercise his right to trial under the 7th amendment of the United State Constitution. However, Reyes will not divert to the Constitutional issue that

plagues the use of such a Motion. Much more important is that the MSJ misplaces ExxonMobil's burden. The MSJ explicitly states that "he (Reyes) fails to meet his burden of establishing a prima facie case or pretext." MSJ page 1. However, according to the case cited by ExxonMobil for that contention, *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), "the burden of establishing the nonexistence of a genuine fact is on the party moving for summary judgment." Id. 330. That burden begins with ExxonMobil, not Reyes, and must be met before shifting to Reyes as the nonmoving party. Id 330. This shift never occurs because ExxonMobil fails to carry its burden. The statements in the MSJ and accompanying exhibits support the disability discrimination claim of Reyes.

### III.
### FACTS AND ARGUMENT

This Response will directly and frequently address specific statements in the MSJ by identifying and responding to the respective page numbers of the MSJ. This begins on page 2 of the MSJ where ExxonMobil states that "Reyes cannot prove that he has a disability." However, in the MSJ ExxonMobil acknowledges not only that Reyes notified management of his PTSD disability. ExxonMobil even acknowledges extending an accommodation for that disability. For example, see ExxonMobil's deposition of Reyes, Reyes Exhibit B page 46, lines 7 - 12,

> Q. Well, who did you file a complaint with, then?
>
> A. Steve Coker.
>
> Q. And who was Steve Coker?
>
> A. First-line supervisor.

> Q. Were you satisfied with Steve Coker's response?
>
> A. At time, yes.
>
> Q. What do you mean by that?
>
> A. He would try to work with me and not let me work with Jim Becknell.

Also see Reyes Exhibit B page 64, lines

> Q. He's under the care of a psychiatrist who provided an IDR -- do you see that sentence?
>
> THE REPORTER: Slow down reading.
>
> A. Yes.

Then we see on Reyes Exhibit B page 74 line 25 and page 75, lines 1-3.

> A. Correct. I reached out to Steve Coker and Troy and asked them to please keep him away from me. I couldn't handle that. I told him I couldn't handle that because of my PTSD.

An illustration of the confusion by ExxonMobil on the applicable law, in the MSJ on page 2 ExxonMobil states: "Nor can Reyes establish that he was replaced by anyone outside his protected classes or that similarly situated employees were treated better." However, while the evidence shows this is a true statement, it is also irrelevant. At the beginning of ExxonMobil's ARGUMENT & AUTHORITIES section on page 2 of the MSJ ExxonMobil cites *EEOC v. LHC Group* 773 F.3d 688, 694 (5th Cir. 1014) for the proposition that "Reyes must prove he was "replaced by

someone outside the protected class . . ." This case will be discussed further below. However, for now sufficient to point out that a significant result of that case was the 5th Circuit's explicit determination that a disability Plaintiff has no such burden. Id 697.

Also on page 2 of the MSJ ExxonMobil states that the Company knew of the Reyes disability. First of all on this page 2 of MSJ the Company contends that Reyes "fails to establish that EMPCo failed to accommodate him." The reality is that ExxonMobil knew about Plaintiff's PTSD disability and had accommodated him up until the failure to accommodate him resulted in his wrongful termination. For example this exchange occurred during the ExxonMobil deposition of Reyes. In Reyes Exhibit B, on pages 74 lines 19-25 and page 75 lines 1-10, Reyes is being deposed by counsel for ExxonMobil.

> Q. And do you remember telling Exxon that you usually didn't work with Becknell; is that correct?
>
> A. Right
>
> Q. And I think that's consistent with what you said earlier, which is you really didn't work with him that much; is that correct?
>
> A. Correct: I reached out to Steve Coker and Troy and asked them to please keep him away from me. I couldn't handle that. I told him I couldn't handle that because of my PTSD.
>
> Q. And is it your testimony that Coker and Troy kept you away from him and that's why you were not working much with him?

    A. Yes, ma'am.

    Q. So then <u>you would agree with me</u> that they listened to your request?

    A. Yes, ma'am.

The phrase "you would agree with me" is underlined by the author of this Response for emphasis. Note ExxonMobil, through their counsel, stating "you would agree with me . . ." Here by the ExxonMobil admission we know that ExxonMobil knew about his PTSD and knew he had requested an accommodation consisting of not dealing with Becknell. On point here is the propensity of Becknell for inappropriate behavior toward other employees, including violence, as was stated in the Company investigation discussed below in this Response.

And who were the Coker and Troy referred to by ExxonMobil's counsel? In that same deposition by ExxonMobil, Reyes Exhibit B, page 46, lines 7- 13

    Q. And who was Steve Coker?

    A. First-line supervisor.

    Q. Were you satisfied with Steve Coker's response

    A. At times, yes.

    Q. What do you mean by that?

    A. He would try to work with me and not let me work with Jim Becknell.

The in that deposition by ExxonMobil, Reyes Exhibit B, page 48, lines 11 – 16.

    Q. So it sounds like from 2015 to early 2017, Steve Coker was your supervisor, is that correct?

    A. Yes, ma'am.

> Q. And then in early 2017 until your discharge in June 2017, who was your supervisor?
>
> A. Troy Coker.

Aside from that deposition exchange, as to the status of Troy Kidder see the Investigation Report by ExxonMobil, Reyes Exhibit A-3 which lists Troy Kidder. As to the status of Steve Coker, see the statement of Troy Kidder taken by ExxonMobil, where Kidder states Steve Coker had the same status as Kidder and both supervised Reyes.

These are confirmations by ExxonMobil through their counsel for the record. They make clear the fact that Reyes had a disability, that he notified Defendant of the disability consisting of war zone induced PTSD (Post Traumatic Stress Syndrome.), that he requested an accommodation for that disability and that the accommodation consisted of being kept away from another employee; i.e. Becknell. ExxonMobil made such accommodation up to the point that it failed to make the accommodation, a failure resulting in Becknell attacking Reyes and Reyes being terminated.

The issue arises not only as to whether Reyes is disabled. Was he a qualified employee with a disability? According to ExxonMobil, the answer is yes. Reyes was very qualified. In the MSJ, page 3, ExxonMobil states "Throughout his employment Reyes continually received pay raises and positive performance reviews."

Also in the MSJ page 5 the Defendant goes on to discusses an attack by Becknell on Reyes. This is an attack that resulted in the termination of Reyes and Becknell. As

ExxonMobil states in the MSJ, "Specifically, Becknell knocked a beer mug out of Reyes's hand, which cut Reyes's hand." This statement is apparently based on the statement by Becknell. After all, the only witnesses between the incident between Beckman and Reyes were Beckman, who as discussed below failed to follow Company plicy in that he did not report the incident, and Reyes who did follow Company policy by reporting it. ExxonMobil contends, without any evidence, that "Reyes bit Becknell's hand, puncturing his skin in several places and leaving a bloody bite mark." This is apparently again based on the statement by Jim Becknell and only Becknell, Reyes Exhibit A-4, taken by ExxonMobil. Actually this is part of his confusing statement about his encounter with Reyes. Becknell says: " I pushed him to get away and the beer came out of his hand and it just escalated from there. Eustavo bit me on the hand. I pushed him so I could have some space. He then dropped the beer mug." Reyes Exhibit A-4, page 3 of 6, Exxon 000233. Read by a reasonable juror this statement makes no sense. First Becknell pushes and then the beer comes out of Reyes' hand and it escalates from there. Then he says Reyes bit him on the hand, he pushes Reyes and then the beer came out of Reyes' hand and it escalates from there. Clearly inherent contradiction shows Beckman is fabricating his statement and goes to the credibility of any role of Becknell as described by ExxonMobil in the MSJ.

Becknell is the same employee that had been the subject of Reyes' PTSD accommodation request, an accommodation provided up until ExxonMobil allowed a violation of such a accommodation when Reyes was confronted by Becknell.

Whereas, according to ExxonMobil, Reyes is described, as quoted above, an employee who "continually received pay raises and positive performance reviews", Becknell's tenure had been much less praiseworthy. For example, in Reyes Exhibit A-4 consisting of witness statements, an employee by the name of Stephen Barnard observed a physical confrontation between Becknell and an employee by the name of "Tommy." In his statement for ExxonMobil Barnard says of an incident involving Becknell, Reyes Exhibit A-4, page 2 of 3, section "c": "I actually had to separate them." Barnard said of Becknell "He gets in arguments with people all the time." Reyes Exhibit A-4, page 2 of 3, section "e". Of particular importance, that was not an isolated incident. However, also important is that Barnard was describing Beckman's general behavior during his employment by ExxonMobil. For example, the ExxonMobil investigation report, Reyes Exhibit A-5, excerpt from page Bates Number 000268, states the following investigative findings:

> "(3) other incidents were discovered during the course of the investigation in which Becknell had either verbal or physical altercations with other Tech Leaders or Contractors.
>
> • Verbally abusive toward another Tech Leader while having drinks after dinner.
>
> Challenged the Tech Leader to hit him.
>
> • Verbally abusive toward a Contractor while having drinks.

> Threatened physical violence and to use his position to get the contractor fired from the agency. Becknell was ***not truthful*** in his response to these questions.
>
> • Verbal and physical altercation with another Tech Leader during drinks which he "got in his face" and shoved him. Employees had to be separated by another Tech Leader. Becknell was ***not truthful*** in his response to these questions."

Unlike Becknell, ExsxonMobil provides no evidence that Reyes had a record of verbal and physical altercations. If he had, ExxonMobil would have provided information to that affect in this cause of action.

In comparing Becknell and Reyes, as discussed in the *EEOC v. LHC Group* case cited above, ExxonMobil is not correct in saying Reyes has a burden of showing a comparator. Yet if ExxonMobil had been correct, this information about Becknell alone would be sufficient to meet that burden. ExxonMobil does not contend in the MSJ that Becknell was disabled. Yet, although he had a history of inappropriate behavior, behavior that the Company itself describes as violent and abusive, even being involved in a physical altercation, he was not terminated until he attacked Reyes. Reyes is the very employee who had requested and been granted an accommodation consisting of not having to deal with Becknell. Despite this, on page 5 of the MSJ the Defendant makes the following claim: "Reyes also never identified as disabled in company reporting" Yet, as shown above, Reyes did exactly that. Through the Company's Counsel, ExxonMobil admits he did it. Reyes took the

matter up with two management personnel, Kidder and Coke, and on behalf of the Company they accommodated his PTSD.

The MSJ on page 5 says "Hill and Rajek prepared a report, concluding that both Reyes and Becknell violated the Company's policy on harassment by engaging in violence with each other . . . " Note that Hill and Rajek were human resource personnel and did not actually observe the incident that gave rise to their investigation. They had to rely on the credibility of Reyes who had a very good employment record and Beckman who had a record for abusive behavior, even violence. Based on the ExxonMobil policy, this is a bazaar statement by Hill and Rajek. According to the ExxonMobil policy:

> "Forms of harassment include, but are not limited to, unwelcome verbal or physical advances and sexually, racially, or otherwise derogatory or discriminatory materials, statements, or remarks." See page 21 of ExxonMobil Standards of Business Conduct, Reyes Exhibit A-1.

Being subjected to an attack by the very person whose presence was a violation of the accommodation requested by, and granted to, Reyes is certainly not harassment by Reyes.

Furthermore, when considering ExxonMobil policy, in addition to the lack of credibility by Becknell, the only witness other that Reyes to the incident, the important question arises as to who followed Company policy concerning the incident between Reyes and Becknell. Again we turn to ExxonMobil's MSJ. On page 5 of the MSJ, ExxonMobil states "After the fight, Reyes called his supervisor

at the time, Kidder, to advise him he had engaged in a physical altercation with Becknell." See MSJ page 5. This wording in the MSJ does not actually capture what, according to Kidder, was reported by Reyes. See Kidder statement taken by ExxonMobil, Reyes Exhibit A-4. Regardless of semantics, the critical point is that Reyes followed Company policy and reported the incident. Becknell did not. The ExxonMobil Standards of Business Conduct, page 19, ExxonMobil Exhibit A-1, says "Individuals who believe they have observed or been subjected to prohibited discrimination should immediately report the incident to their supervisors . . . ." When Beckman was asked during the investigation about his failure to report, in the ExxonMobil investigation, Reyes Exhibit A-4, page Exxon 000234, this exchange occurred.

> Investigators question to Becknell: "Why didn't you notify a supervisor?"
>
> Becknell's answer: "To me it happened and it was over with. No harm no foul. I didn't see any reason to call anyone."

Obviously if Reyes had not reported the incident he would not have been terminated. If he like Becknell had failed to follow Company procedure, there would have been no investigation and he would not have been terminated. ExxonMobil provides no evidence that anyone else reported the matter.

## PRIMAE FACIE CASE

So did ExxonMobil meet its burden concerning the element of a prima facie claim under the ADA? The case cited both in ExxonMobil's Motion and in this Response, states that a claimant mush prove (1) that he has a disability, (2) that he was

qualified for the job, and (3) that he was subject to an adverse employment decision on account of his disability. *EEOC v. LHV Group, Inc,* 773 F.3d 688, 697 (5th Cir). Also, despite the assertion by ExxonMobil otherwise, the existence of a comparator is not a burden of the claimant. Id 696. As to the burden in ExxonMobil's Motion, per *Celotex Corp. v. Catrett,* "the burden of establishing the nonexistence of a genuine fact is on the party moving for summary judgment." Id. 330. The statements in ExxonMobil's own Motion and accompanying Exhibits shows this burden was not discharged.

## PRETEXT.

Although ExxonMobil has failed to carry its burden on the prima facie case, let us assume pretext can be considered. Here again, the ExxonMobil Motion comes out in favor of Reyes.

According to *Rachid v. Jack In the Box, Inc*. 376 F.3d 305, 312, (5th Cir 2004) as quoted in *EEOC v. LHV Group, Inc,* Id 702 the burden on pretext by Reyes would be as follows:

(1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or

(2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative).

So what reason did ExxonMobil give to terminate Reyes?  First consider the reasons given to Reyes in Reyes Exhibit A-6, the letter informing him he was being terminated.

  (1) Violating the company's Harassment Policy by engaging in physical violence.

  (2) Misconduct during an internal Company investigation.

  (3) Failure to provide accurate information and were determined to have been dishonest during the investigation.

Put aside that nothing in the Motion nor any of the ExxonMobil Exhibits accompanying  it provide evidence of Reyes harassing anyone, of engaging in misconduct or failing to provide accurate information. Actually, Reyes had according to the Company an excellent record during his ExxonMobil employment. Unlike Becknell, he had no record of any violation consisting of abusive behavior or violence.  He was confronted by an employee, Becknell, who did have a Company record of abuse and violence and yet had not been terminated and, unlike Reyes, violated Company policy by not reporting the incident.  Yet the same exact reasons were given for terminating Becknell.  See Reyes Exhibit A-7.  These contradictions in themselves undercut the validity of the reasons given for terminating Reyes. In fact, an obvious reason for the termination is that ExxonMobil failed in its obligation to provide an accommodation that had been extended by the Company. Reyes requested an accommodation for his PTSD consisting of keeping him away from Becknell, an employee with a history of abuse and violence. As stated in *EEOC v. LHC,* "an employee who fails to demonstrate pretext can still survive summary

judgment by showing that an employment decision was "based on a mixture of legitimate and illegitimate motives ..." Id. 702. Of course, we can assume the reasons given by ExxonMobil as listed above were true although no evidence exists that they are. Even if they were, their only role is that of a fig leaf. Artists have long used a fig leaf to cover up an embarrassing object. Clearly the termination of Reyes was a direct result of an ExxonMobil failure, an embarrassing object, at a particular point of time. That object is the failure to maintain the accommodation they had granted for Reyes's PTSD disability. The accommodation consisted of keeping him and Becknell apart. They failed to do so and the adverse result was Reyes losing his job. So how do we summarize the issue of pretext?

1. ExxonMobil knows Reyes had excellent record.
2. ExxonMobil knows Becknell was known to the Defendant for bad behavior
3. ExxonMobil knows Reyes followed procedure and reported the incident.
4. ExxonMobil knows Becknell failed to follow policy by not reporting.
5. ExxonMobil knows Defendant knew about the disability.
6. ExxonMobil The accommodation by Defendant was to keep Reyes away from Becknell.
7. ExxonMobil should know Defendant's failure to provide the disability led to the very type of confrontation that could obviously result from such failure by ExxonMobil.

CONCLUSION

Based on the facts and reasons shown above, Plaintiff Eustavo Reyes requests that the Court deny the Motion for Summary Judgment as to the claim by Reyes of disability discrimination and award no costs on such Motion.

                                  Respectfully submitted:

                                  _____
                                  Stanley P. Santire
                                  State Bar No. 17643500
                                  Federal ID No. 441644
                                  Email: Stanley@santir.com
                                  Santire Law Firm, PLLC
                                  7500 San Felipe St. Ste. 900
                                  Houston, TX 77063
                                  Ph: 713-787-0405
                                  FAX: 832-201-6791

                                  Attorney in Charge for
                                  Plaintiff Eustavo Reyes

CERTIFICAT OF SERVICE

I hereby certify that a true and correct copy of the foregoing copy of Response to Motion to Summary Judgment was serviced in compliance with the Federal Rules of Civil Procedure upon the following counsel for Defendant and via such counsel on the Defendant that filed the Motion For summary Judgement and such service was on November 6, 2020.

| | |
|---|---|
| Kimberly F. Cheeseman<br>    State Bar No. 24082809<br>Federal ID no. 2454668<br>Kimberly.cheesman@nortonrosefulbright.com<br>Houston, TX 77010-3095 | Shauna Johnson Clark<br>State Bar No. 0070977<br>Federal ID No. 18235<br>shauna.clark@nortonrosebulbright.com<br>Houston, TX 77010-3095 |