United States District Court
Southern District of Texas
**ENTERED**
August 20, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| EUSTAVO REYES, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION H-19-2569 |
| § | |
| EXXONMOBIL PIPELINE COMPANY, § | |
| § | |
| *Defendant*. § | |

### MEMORANDUM OPINION AND ORDER

Pending before the court are defendant ExxonMobil Pipeline Company's (ExxonMobil) motion for summary judgment (Dkt. 13) and motion to strike (Dkt. 17). Plaintiff Eustavo Reyes responded to the motion for summary judgment. Dkt. 14. ExxonMobil replied (Dkt. 15), and Reyes surreplied (Dkt. 16). After reviewing the motions, response, reply, surreply, and applicable law, the court is of the opinion that both ExxonMobil's motion for summary judgment and its motion to strike should be GRANTED.

### I. BACKGROUND

This is an employment discrimination case. ExxonMobil "is focused on the safe transportation of oil and gas products through approximately 4,000 miles of pipeline across the United States." Dkt. 13 at 9. Reyes, who identifies as an Hispanic male, began working at ExxonMobil as a tech leader in April 2014. Dkt. 1 at 1; Dkt. 13 at 9; Dkt. 13-9 at 3–4.[1] Tech leaders supervise "contractor crew members who perform . . . manual labor on pipeline projects, such as pipeline repairs and excavation." Dkt. 13 at 9. On July 15, 2015, Reyes took paid medical

---

[1] For ease of understanding, the court references the electronic page numbers on all exhibits rather than the pagination on the exhibits themselves.

leave for treatment related to post-traumatic stress disorder ("PTSD"), which he developed after serving as a military contractor in Iraq. Dkt. 1 at 2–3; Dkt. 13 at 11. On August 11, 2015, Reyes's physician released him to return to work with no restrictions. Dkt. 13 at 11; Dkt. 13-9 at 24.

Throughout his employment, Reyes received positive performance evaluations. Dkt. 13-9 at 21. However, according to Reyes, he struggled with his PTSD sometimes at work because another employee, Jim Becknell, regularly harassed him. Dkt. 1 at 4, 6–7; Dkt. 14 at 4–5. It is unclear when Becknell's alleged harassment began or what exactly it entailed, but Reyes alleges that Becknell, a white male, called Reyes names and racial slurs, including "wetback." Dkt. 13-5 at 31; Dkt. 13-9 at 40. Reyes did not tell his supervisors that Becknell called him racial slurs, but he told them that Becknell "would just spew nothing but venom" towards him. Dkt. 13-9 at 40. According to Reyes, he told his supervisors that working with Becknell exacerbated his PTSD symptoms; accordingly, his supervisors "would try to work with [him]" and would "not let [him] work with" Becknell. Dkt. 14-7 at 2, 5. Reyes alleges that he requested a transfer to permanently get away from Becknell on multiple occasions, but his transfer requests were denied. Dkt. 1 at 5; Dkt. 13-13 at 2–3.

Then, on June 15, 2017, while on assignment for a pipeline project in Beaumont, Texas, Reyes was involved in a physical altercation with Becknell. Dkt. 13 at 12. According to ExxonMobil, while Reyes and Becknell were dining at a Twin Peaks restaurant, "Becknell knocked a beer mug out of Reyes's hand, which cut Reyes's hand," and "Reyes bit Becknell's hand, puncturing his skin in several places and leaving a bloody bite mark." *Id.* According to Reyes, Becknell "attack[ed]" him and caused a cut on Reyes's hand. Dkt. 1 at 6; Dkt. 14 at 8–9. Reyes denies biting Becknell. Dkt. 13-5 at 33; Dkt. 14 at 9.

After the altercation, Reyes called his supervisor at the time, Troy Kidder, to tell him about the incident. Dkt. 14 at 12–13. Kidder informed ExxonMobil's human resources department, and the department opened an investigation into the incident on June 19, 2017. Dkt. 13 at 13. During the two-day investigation, ExxonMobil's human resources advisor, Kim Hill, and ExxonMobil's midstream human resources supervisor, Brad Rajek, interviewed numerous people about the incident, including Reyes and Becknell. *Id.*

During Reyes's interview, Hill and Rajek told Reyes that they expected him to be truthful, and that if he provided "false or inaccurate information," he could be "subject to discipline, including termination." Dkt. 13-9 at 31. Reyes told them that, on the day of the incident at the restaurant, Becknell called him a "stupid motherfucker" and that Becknell is "not a happy guy," but he also noted that Becknell is "a good guy" and that "[w]hen you get him one on one[,] he's fine to deal with." Dkt. 13-5 at 31–32, 34. When asked whether it was true that someone was bitten during the altercation, Reyes said no. *Id.* at 33. At the end of the interview, Reyes again requested a transfer to a different section at ExxonMobil because he was concerned about being "blackballed" for participating in the investigation, but Hill and Rajek told Reyes that ExxonMobil prohibits retaliation and denied the transfer request. *Id.* at 35.

After the investigation, Hill and Rajek prepared a report in which they concluded that (1) both Reyes and Becknell violated ExxonMobil's harassment policy; and (2) both Reyes and Becknell "were not truthful during the investigation." Dkt. 13-4 at 2. Specifically, they found that (1) Reyes was not truthful during the investigation when he answered "no" to the question of whether someone was bitten during the altercation—according to ExxonMobil, Becknell had visible bite marks; and (2) Becknell was not truthful regarding two previous altercations with other workers. Dkt. 13 at 15; Dkt. 13-6 at 4. Accordingly, Hill and Rajek recommended termination of

both Reyes and Becknell, and on June 23, 2017, both Reyes and Becknell were terminated. Dkt. 13-4 at 2–3; Dkt. 14-5; Dkt. 14-6.

On January 23, 2018, Reyes filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Dkt. 13-13. After he received a notice of his right to sue, Reyes filed this lawsuit on July 17, 2019. Dkt. 1. On October 21, 2020, ExxonMobil moved for summary judgment. Dkt. 13. On November 19, 2020, ExxonMobil also filed a motion to strike Reyes's surreply. Dkt. 17. The motions are ripe for disposition.

## II. MOTION TO STRIKE

The court will first address ExxonMobil's motion to strike Reyes's surreply. Dkt. 17. Surreplies are highly disfavored because "they usually are a strategic effort by the non-movant to have the last word on a matter." *Weaver v. Celebration Station Props., Inc.*, No. CIV.A. H-14-2233, 2015 WL 1932030, at *3 (S.D. Tex. Apr. 28, 2015) (Rosenthal, C.J.) (quoting *Lacher v. West*, 147 F. Supp 2d 538, 539 (N.D. Tex. 2001)). "While the court sometimes will allow additional briefing when parties move to submit additional briefing and justice so requires," Reyes did not file a motion to submit additional briefing, and the court does not find that justice requires it to accept Reyes's additional briefing. *Landing Council of Co-Owners v. Fed. Ins. Co.*, No. CIV.A. H-12-2760, 2013 WL 4787954, at *2 (S.D. Tex. Sept. 9, 2013) (Miller, J.). Reyes's surreply essentially reiterates the arguments in his response.[2] Moreover, Reyes did not respond to

---

[2] Reyes's surreply mostly repeats the arguments in his response. *Compare* Dkt. 14, *with* Dkt. 16. However, in his surreply, Reyes confusingly writes the following: "ExxonMobil accurately states that Reyes is not responding to the ExxonMobil arguments concerning Title VII; however, ExxonMobil has no basis to conclude that claim [fails] as a matter of law. Reyes is merely being proportionate and dealing only with the violation of the Americans with Disability Act." Dkt. 16 at 1–2. Although the court will not consider Reyes's surreply, it is notable that when a plaintiff fails to defend a claim in response to a motion for summary judgment, that claim is abandoned. *See infra* Part III.B.1.

4

ExxonMobil's motion to strike. Under Local Rule 7.4, "[f]ailure to respond to a motion will be taken as a representation of no opposition." S.D. Tex. L.R. 7.4. Thus, ExxonMobil's motion to strike is GRANTED.

### III. MOTION FOR SUMMARY JUDGMENT

In his complaint, Reyes alleges violations of both the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA") and Title VII of the Civil Rights Act of 1964 ("Title VII"). Dkt. 1 at 7–8.

**A. Legal Standard**

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008).

**B. Analysis**

   **1. Title VII Claim**

Reyes asserts claims against ExxonMobil under Title VII for national origin discrimination and for a hostile work environment. Dkt. 1 at 8. In ExxonMobil's motion for summary judgment, among other contentions, ExxonMobil argues that (1) Reyes cannot establish even a prima facie

case of national origin discrimination because he cannot establish "that he was replaced by someone outside his protected class or otherwise treated less favorably than similarly situated employees;" (2) Reyes has no evidence that ExxonMobil's purported reasons for his termination are pretextual; and (3) Reyes cannot establish that the alleged harassment affected a term, condition, or privilege of employment, or that ExxonMobil knew or should have known about the harassment. Dkt. 13 at 20, 22–29.

In response, Reyes appears to completely abandon his Title VII claims: "Although Reyes made a separate claim concerning discrimination under Title VII of the Civil Rights Act of 1964, in this Response to the Motion for Summary Judgment by ExxonMobil, Reyes will deal only with the most egregious action by ExxonMobil which is disability discrimination." Dkt. 14 at 3. If there were any doubt remaining as to whether Reyes had abandoned his Title VII claims, that doubt is addressed by Reyes's proposed order. Dkt. 14-8. If signed, Reyes's proposed order would deny in part and grant in part ExxonMobil's motion for summary judgment. *Id.* Specifically, Reyes writes in his proposed order that "good cause does not exist as to Plaintiff's claim of national origin discrimination and harassment." *Id.*

As the party opposing summary judgment, Reyes is "required to identify specific evidence in the record, and to articulate the precise manner in which that evidence supports [his] claim." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (cleaned up). Reyes fails to identify specific evidence supporting his Title VII claims—indeed, he has not offered any evidence at all. By his own admission, Reyes's response addresses only his disability discrimination claim. Dkt. 14 at 3. Thus, the court finds that Reyes has abandoned his Title VII claims. *See, e.g.*, *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (concluding that plaintiff abandoned her claim when she failed to defend it in response to a motion to dismiss and noting that "[h]er failure

6

to pursue [her] claim beyond her complaint constituted abandonment"); *Arias v. Wells Fargo Bank, N.A.*, No. 3:18-CV-00418-L, 2019 WL 2770160, at *2 (N.D. Tex. July 2, 2019) ("When a plaintiff fails to defend a claim in response to a motion to dismiss or summary judgment motion, the claim is deemed abandoned."); *Penrod v. Bank of N.Y. Mellon*, 824 F. Supp. 2d 754, 763 (S.D. Tex. 2011) (Atlas, J.) (finding that plaintiffs' claim was abandoned because plaintiffs "offer[ed] no briefing on the subject."). Accordingly, ExxonMobil's motion for summary judgment on Reyes's Title VII claims is GRANTED.

**2. Disability Discrimination Claim**

ExxonMobil also moves for summary judgment on Reyes's disability discrimination claim. Dkt. 13. To prevail on his disability discrimination claim, Reyes must "either present direct evidence that [he] was discriminated against because of [his] disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973), a Title VII case." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). Reyes does not present direct evidence of discrimination, so the court applies the burden-shifting analysis, which requires Reyes to first establish a prima facie case of discrimination.[3] *Id.*

---

[3] Reyes contends that he does not have to establish a prima facie case of discrimination because the burden is entirely on ExxonMobil as the party moving for summary judgment. Dkt. 14 at 4. But where the burden of proof at trial is on the nonmovant as it is here, the party moving for summary judgment may satisfy its initial summary judgment burden by showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. "Once the moving party has met its burden, the nonmoving party must come forward with specific evidence in order to raise a genuine issue of material fact." *Vanzzini v. Action Meat Distribs., Inc.*, 995 F. Supp. 2d 703, 711 (S.D. Tex. 2014) (Ellison, J.). "Simply resting on the allegations in the pleadings will not suffice." *Id.* ExxonMobil has satisfied its initial burden by pointing to a lack of evidence to support Reyes's case. Thus, the court applies the *McDonnell Douglas* burden-shifting framework, which requires Reyes to establish a prima facie case of discrimination. *See, e.g.*, *LHC Grp.*, 773 F.3d at 694 ("In the Rule 56 context, a prima facie case

To make a prima facie showing of disability discrimination under the Americans with Disabilities Act ("ADA") as amended by the ADAAA, Reyes must establish that (1) he has a disability; (2) he was qualified for his job; and (3) he was "subject to an adverse employment decision on account of his disability." *Id.* at 697 (quoting *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999)); *see also Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir. 2013) (discussing the requirements for a prima facie case of disability discrimination under the ADA as amended by the ADAAA). The burden of production then shifts to ExxonMobil to articulate a legitimate, nondiscriminatory reason for Reyes's termination. *LHC Grp.*, 773 F.3d at 694, 701. Lastly, the burden shifts back to Reyes to show that ExxonMobil's proffered reason is pretextual. *Id.* at 694, 702.

    *a. Prima Facie Case*

ExxonMobil contends that it is entitled to summary judgment on Reyes's disability discrimination claim because Reyes cannot prove that he is disabled or that he was replaced by, or treated less favorably than, a similarly situated employee who is not disabled. Dkt. 13 at 20–22. As an initial matter, ADA disability discrimination plaintiffs in the Fifth Circuit are not required to produce comparator evidence. *LHC Grp.*, 773 F.3d at 695–97 (acknowledging a split in the circuit's cases on whether comparator evidence is required for a disability discrimination claim but expressly deciding to follow a line of cases that does not require plaintiffs to prove that they were replaced by or treated less favorably than nondisabled employees); *see also Austgen v. Allied Barton Sec. Servs., L.L.C.*, 815 F. App'x 772, 777 (5th Cir. 2020) (requiring disability discrimination plaintiff to prove only "that (1) he is a qualified individual; (2) that he has a

---

of discrimination plus a showing that the proffered reason is pretextual is typically enough to survive summary judgment.").

disability; and (3) that he suffered a negative employment action because of the disability"); *Gonzalez v. United Parcel Serv.*, 777 F. App'x 735, 737–38 (5th Cir. 2019) (same); *Weed v. Sidewinder Drilling, Inc.*, 245 F. Supp. 3d 826, 837 (S.D. Tex. 2017) (Harmon, J.) (discussing the required three elements of a prima facie case of disability discrimination under the ADA in the Fifth Circuit and noting that "there is no necessity for comparators under this test"). Instead, comparator evidence is "best understood as providing one possible way to prove nexus between the employee's disability and her termination." *LHC Grp.*, 773 F.3d at 697. Therefore, ExxonMobil's argument regarding comparator evidence is unavailing. As a result, the court will only focus on whether a genuine dispute of material fact exists on the issue of Reyes's disability.

ExxonMobil contends that: (1) Reyes's PTSD diagnosis and medical leave for treatment related to his PTSD are insufficient to establish that he is disabled; and (2) Reyes has no evidence that his alleged PTSD substantially limited a major life activity, "especially considering [that] his own doctor released him to return to work with no restrictions or limitations." Dkt. 13 at 11–12, 20. In response, Reyes argues that ExxonMobil knew about and accommodated his PTSD because Reyes told his supervisors that working with Becknell exacerbated his PTSD symptoms, and his supervisors tried to "work with [him] and not let [him] work with . . . Becknell." Dkt. 14 at 4–5. Reyes contends that (1) his request not to work with Becknell was a request for an accommodation; and (2) ExxonMobil had knowledge of Reyes's disability because it attempted to provide the requested accommodation. *Id.* at 8.

"For purposes of proving ADA discrimination, it is important to distinguish between an employer's knowledge of an employee's disability versus an employer's knowledge of any limitations experienced by the employee as a result of that disability." *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996). "This distinction is important because the ADA

9

requires employers to reasonably accommodate limitations, not disabilities." *Id.* In *Taylor*, the Fifth Circuit provided a helpful illustration of the difference between a disability and a limitation resulting from a disability:

> To illustrate the distinction between a disability and a limitation resulting from a disability, consider the following hypothetical of two hearing-impaired employees: One hearing-impaired employee is an assembly worker who suffers no job limitations as a result of her hearing-impairment disability; she is able to perform the essential functions of her job without accommodation. The other hearing-impaired employee, however, is a telephone operator who, because of her inability to hear, is limited in her ability to perform the essential functions of her job; this disabled employee may require a reasonable accommodation as a result of her impairment. Both employees are disabled, but only one employee is limited by her disability.

*Id.*

Reyes contends that he is disabled under the ADAAA. Dkt. 1 at 2. The ADAAA made it easier for ADA plaintiffs to prove a disability, but "it in no way eliminated the term from the ADA or the need to prove a disability on a claim of disability discrimination." *Neely*, 735 F.3d at 245. "The ADA defines a disability as '(A) a physical or mental impairment that *substantially limits* one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment.'" *Kemp v. Holder*, 610 F.3d 231, 235 (5th Cir. 2010) (quoting 42 U.S.C. § 12102(1)) (emphasis added). Among others, major life activities include "seeing, hearing, eating, sleeping, walking, . . . learning, reading, concentrating, thinking, communicating, and working." 42 USC § 12102(2)(A). "[T]o be substantially limited means to be unable to perform a major life activity that the average person in the general population can perform, or to be significantly restricted in the ability to perform it." *E.E.O.C. v. Chevron Phillips Chem. Co.*, LP, 570 F.3d 606, 614 (5th Cir. 2009).

10

In the Fifth Circuit, PTSD in and of itself "is not necessarily a disability contemplated by the ADA." *Hamilton v. Sw. Bell Tel. Co.*, 136 F.3d 1047, 1050 (5th Cir. 1998). "The statute requires an impairment that substantially limits one or more of the major life activities." *Id.* Reyes seemingly contends that his PTSD substantially limited his ability to work such that he is disabled under the ADA. Dkt. 14 at 5–8. But Reyes presents insufficient evidence to show that he was substantially limited by his PTSD. Simply referring to a medical diagnosis is not enough to establish that Reyes had a qualifying disability. *See Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 198, 122 S. Ct. 681 (2002), *superseded by statute on other grounds*, ADA Amendments Act of 2008, Pub. L. No. 110–325, 122 Stat. 3553 (2008) ("It is insufficient for individuals attempting to prove disability status . . . to merely submit evidence of a medical diagnosis of an impairment."). Further, Reyes's doctor released him back to work with no restrictions. Dkt. 13-9 at 24. The only evidence Reyes submits regarding his disability is his own deposition testimony, and in his testimony, he does not specify how his PTSD symptoms were exacerbated by working with Becknell or how his symptoms substantially limited him at work. Dkt. 14 at 4–8. Moreover, "when the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that the plaintiff allege he is unable to work in a broad class of jobs." *Green v. United Parcel Serv., Inc.*, 847 F. App'x 207, 211 (5th Cir. 2021) (cleaned up). Reyes makes no attempt to show that he is unable to work in a broad class of jobs. Thus, Reyes "has not adduced sufficient evidence that he is substantially limited in the major life activity of working." *Id.* Accordingly, Reyes cannot establish a prima facie case of disability discrimination.

*b. Pretext*

Even if Reyes had established a prima facie case of disability discrimination, which he has not, Reyes fails to demonstrate a genuine issue of material fact as to whether ExxonMobil's proffered reasons for his termination are pretextual. ExxonMobil contends that it terminated Reyes because (1) he violated ExxonMobil's policies on harassment during the physical altercation with Becknell; and (2) he lied when interviewed about the incident. Dkt. 13 at 14–15; Dkt. 13-6 at 4. ExxonMobil easily satisfies its burden of production by providing a legitimate, nondiscriminatory reason for Reyes's termination—the record is replete with evidence that Reyes and Becknell were in a physical altercation and that ExxonMobil believed they both lied during its investigation. *See, e.g.*, Dkt. 13-1 at 4; Dkt. 13-4 at 3; Dkt. 13-5 at 7; Dkt. 13-6 at 2–4. Thus, the burden shifts back to Reyes to show that ExxonMobil's proffered reason is pretextual. *LHC Grp.*, 773 F.3d at 694.

"A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). "[A]n employee must present 'substantial evidence' that the employer's legitimate, nondiscriminatory reason for termination is pretextual." *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 480 (5th Cir. 2016) (quoting *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015)). "In pretext cases, it is not enough that the [employer] was wrong about the underlying facts that motivated the adverse employment action. The only question is whether the employer had a good-faith belief that the facts that motivated the adverse action were true." *Lucas v. T-Mobile USA, Inc.*, 217 F. Supp. 3d 951, 957 (S.D. Tex. 2016) (Rosenthal, J.).

Reyes argues that ExxonMobil's proffered reasons for his termination are pretextual because, unlike Becknell who had a "record of abuse and violence," Reyes had "an excellent record

12

during his ExxonMobil employment." Dkt. 14 at 15. According to Reyes, it is suspicious that ExxonMobil terminated Reyes and Becknell for the same reasons—violating ExxonMobil's harassment policy and lying during the investigation about the altercation between them—because Reyes had a better employment record than Becknell. *Id.*; *see also* Dkt. 14-5; Dkt. 14-6. Reyes also takes issue with the allegations underlying his termination. He contends that he did not bite Becknell, and thus, he did not violate ExxonMobil's harassment policy or lie during the investigation when he answered "no" to the question of whether someone was bitten during the altercation between him and Becknell. Dkt. 13-5 at 33; Dkt. 14 at 9, 15.

"A factual dispute over the employee's innocence of the allegations against him is not enough to survive summary judgment; the plaintiff must put forward evidence sufficient to create a factual dispute as to whether or not the [employer] subjectively believed that the allegations were true." *Lucas*, 217 F. Supp. 3d at 957. ExxonMobil submits extensive evidence showing that it had a good-faith belief that the facts underlying Reyes's termination were true. *See, e.g.*, Dkt. 13-1 at 4; Dkt. 13-4 at 3; Dkt. 13-5 at 7; Dkt. 13-6 at 2–4. Reyes puts forth no evidence suggesting that ExxonMobil's proffered reasons for his termination are false and that he was actually terminated because of his disability. Thus, Reyes fails to establish a genuine issue of material fact as to whether ExxonMobil's proffered reasons for his termination are pretextual. Accordingly, ExxonMobil's motion for summary judgment on Reyes's disability discrimination claim is GRANTED.

### 3. Failure-to-Accommodate Claim

Reyes repeatedly blurs the lines between a disability discrimination claim and a failure-to-accommodate claim. *See* Dkt. 14 at 16 ("[T]he termination of Reyes was a direct result of an ExxonMobil failure . . . to maintain the accommodation they had granted for Reyes's PTSD

13

disability. The accommodation consisted of keeping him and Becknell apart. They failed to do so and the adverse result was Reyes losing his job."). However, Reyes explicitly states that he intends to pursue only his disability discrimination claim: "Reyes . . . filed suit against ExxonMobil alleging various claims. The most important consists of disability discrimination . . . in this Response to the Motion for Summary Judgment by ExxonMobil, Reyes will deal only with the most egregious action by ExxonMobil which is disability discrimination." *Id.* at 3. Further, in Reyes's proposed order, he does not mention the failure-to-accommodate claim and states only that ExxonMobil's motion for summary judgment should be denied as to Reyes's disability discrimination claim. Dkt. 14-8. Thus, the court finds that, to the extent that Reyes intended to pursue a failure-to-accommodate claim, that claim has been abandoned because he failed to defend it in response to ExxonMobil's motion for summary judgment. *See supra* Part III.B.1.

### III. CONCLUSION

Both ExxonMobil's motion for summary judgment and ExxonMobil's motion to strike are GRANTED. Dkts. 13, 17. The court will enter final judgment concurrently with this order.

Signed at Houston, Texas on August 20, 2021.

Gray H. Miller
Senior United States District Judge